PETERSON NOVELTIES, INC v CITY OF BERKLEY

Docket No. 239895. Submitted August 6, 2003, at Detroit. Decided August 14, 2003. Approved for publication October 7, 2003, at 9:00 A.M.

Peterson Novelties, Inc., a seasonal seller of fireworks, and its owner, Harold Barman, brought an action in the Oakland Circuit Court against the city of Berkley and a city police officer, Raymond Anger, after the 1996 arrests of Barman and other Peterson employees for offering to sell potentially illegal fireworks, which were stored and then seized pursuant to a search warrant. The plaintiffs alleged violations of 42 USC 1983 and 1988, and of the federal and state constitutions. Specifically, the plaintiffs brought claims for retaliation, unreasonable search and seizure, deprivation of property without due process of law, malicious prosecution, and false arrest or false imprisonment. Previously, Peterson had filed suit against the city in the same circuit court in 1995 to compel the city to issue Peterson a permit to sell fireworks. In May 1996, the circuit court issued a temporary restraining order compelling the city to issue a permit to Peterson to sell legal fireworks. However, in June 1996, Barman and the other Peterson employees were arrested and certain fireworks seized after the city and Anger received information that the plaintiffs were selling illegal fireworks. Peterson filed an emergency motion for an order to show cause why the city should not be held in contempt in light of the circuit court's temporary restraining order. Ultimately, the circuit court granted Peterson declaratory relief, concluding that the fireworks statute, MCL 750.243a, was unconstitutionally vague. The state district court then dismissed the criminal charges pending against Barman and the other employees, and the prosecutor's appeal of this dismissal was resolved by stipulation between the parties. In 1999, Peterson and Barman brought suit in federal district court, alleging violations of § 1983, as well as of the First, Fourth, and Fourteenth Amendments of the United States Constitution, along with state claims for false arrest, false imprisonment, and malicious prosecution, all based on the 1996 arrests and seizure. The federal district court dismissed Peterson and Barman's action, concluding that their claims were inextricably intertwined with the 1995 circuit court action, and thus were precluded under the doctrine that prevents federal district courts from undertaking

appellate review of certain state court judgments. Peterson and Barman appealed the dismissal to the United States Court of Appeals for the Sixth Circuit, which affirmed the dismissal on the basis that Peterson and Barman's claims were barred by the doctrine of claim preclusion because the claims were either addressed or could have been addressed in the 1995 circuit court action, or the 2002 circuit court action that resulted in this appeal. Peterson and Barman filed a motion in the Oakland Circuit Court to reinstate the 1995 case, but the circuit court denied the motion. Peterson and Barman subsequently filed the present action in November 2000. The circuit court, John J. McDonald, J., granted the city and Anger's motion for summary disposition, concluding that Peterson and Barman's claims were barred under the doctrine of res judicata, and that even if the claims for false arrest, false imprisonment, and malicious prosecution were not, the plaintiffs failed to state a claim on which relief could be granted. Peterson and Barman appealed.

The Court of Appeals *held*:

1. The trial court did not err in concluding that Peterson and Barman's claims of retaliation and deprivation of property are barred by the doctrine of res judicata. The circuit court decided similar issues in Peterson's emergency motion on the merits, and the proceedings resulted in a final order. In the emergency motion, Peterson alleged that the city illegally seized fireworks contrary to the court's order and conducted an improper search without a warrant. The current complaint raises issues arising out of the same event, and the same facts and circumstances would sustain both the 1996 emergency motion and the plaintiffs' current claims. Peterson and the city were parties to the original circuit court action, and the claims between these parties are clearly barred because the present claims could have been brought in the original action. Although Barman was not a party to the original action, as the owner of Peterson, he is a privy of Peterson and therefore his claims are also barred. The plaintiffs abandoned their argument that Anger was not a party or privy to the original circuit court action. Unlike the claims of malicious prosecution, the plaintiffs' claims of retaliation and deprivation of property clearly could have been brought in the prior action because these claims are not the type of claims that would not ripen until after a favorable dismissal of a criminal proceeding since they would not invalidate a conviction in any way.

2. Dismissal of the plaintiffs' claims of malicious prosecution, false arrest or false imprisonment, and unreasonable search and seizure was proper under MCR 2.116(C)(10), regardless of whether these claims are barred by res judicata. With regard to their claims

of false arrest or false imprisonment, the plaintiffs failed to show that the arrests were made without probable cause. It is undisputed that Anger purchased potentially illegal fireworks at the plaintiffs' tent; thus, there was probable cause for the arrests. The fact that the fireworks statute was later found unconstitutional by the trial court (but constitutional by the Court of Appeals), did not negate probable cause for the arrests because the arrests were made in good faith and on the basis of a presumptively valid statute.

3. The plaintiffs' state claims of malicious prosecution failed because the stipulation to dismiss the criminal charges against Barman and the other Peterson employees cannot be considered a favorable termination of the charges, a necessary element of such a claim. Similarly, the plaintiffs' federal, Fourth Amendment malicious prosecution claim was properly dismissed because the plaintiffs failed to show, at a minimum, that the arrests were made without probable cause. Likewise, the plaintiffs' Fourth Amendment and 42 USC 1983 unreasonable search and seizure claims failed for the same reason. Moreover, the plaintiffs cannot show a violation of their reasonable expectation of privacy on the basis of Anger's purchase of fireworks at the plaintiffs' commercial enterprise, and there is no evidence of an unreasonable search and seizure because the fireworks were stored on the plaintiffs' property pursuant to an agreement.

4. Finally, the plaintiffs' argument that the trial court should have allowed further discovery with regard to their claims of malicious prosecution, false arrest, or false imprisonment was without merit because further discovery did not stand a reasonable chance of uncovering factual support for their claims.

Affirmed.

Constitutional Litigation Associates, P.C. (by *Hugh M. Davis, Jr.*), for the plaintiffs.

*O'Connor, DeGrazia & Tamm, P.C.* (by *Julie McCann O'Connor*), for the defendants.

Before: JANSEN, P.J., and NEFF and KELLY, JJ.

PER CURIAM. Plaintiffs[1] Peterson Novelties, Inc. (Peterson), and Harold Barman appeal as of right

---

[1] Harold Barman is the owner of Peterson Novelties, Inc.

from an order granting defendants[2] city of Berkley and Raymond Anger's motion for summary disposition and dismissing plaintiffs' claims. We affirm.

I

Sometime in 1995, Peterson, a seasonal seller of fireworks, applied for a permit to sell fireworks in the city of Berkley, but was denied. On June 14, 1995, Peterson filed suit in the Oakland Circuit Court, requesting that the court order the city to grant the permit to sell fireworks.[3] The circuit court issued a temporary restraining order for the 1995 season, ordering the city to grant a permit to Peterson. On April 24, 1996, while the 1995 case was still pending, Peterson filed a motion for a writ of mandamus and injunctive relief to compel the city to process a permit application for the 1996 season. On May 9, 1996, the circuit court issued a temporary restraining order compelling the city to issue Peterson a seasonal sales permit for the sale of fireworks not prohibited under Michigan law.

On June 24, 1996, Detective Anger and the Berkley Public Safety Department, having received information that plaintiffs were potentially selling illegal fireworks, inspected the tent where plaintiffs were conducting business. Anger purchased $91.16 worth of fireworks he believed to be illegal. An agreement was reached with Barman, whereby fireworks defendants believed to be illegal would be stored in an empty trailer at the back of the property rather than hauled

---

[2] Detective Raymond Anger is a city of Berkley police officer.
[3] Oakland Circuit Court, Case No. 95-498817-CZ.

away. Anger also arrested two of plaintiffs' employees for the sale of illegal fireworks.

On June 25, 1996, a state district judge issued a warrant for the search and seizure of certain fireworks in the storage bin where plaintiffs' potentially illegal fireworks were stored. Pursuant to the warrant, Anger and city officials seized fireworks they determined were offered for sale in violation of state law, and at some point obtained criminal arrest warrants for plaintiffs' employees. Also on June 25, 1996, Peterson filed an emergency motion for an order to show cause why the city should not be held in contempt of the circuit court's May 9, 1996, order and for an order for the return of the seized property. In its emergency motion, Peterson argued that it had been operating legally and within the terms of the circuit court's previous orders and that the city had intentionally acted contrary to the circuit court's order, seizing fireworks and arresting employees without a warrant. Peterson contended that the seizures were illegal. Peterson asked the circuit court to prevent the city from applying for a warrant based "on the false claim that Plaintiffs are engaged in illegal activity without attaching a copy" of the circuit court's May 9, 1996, order. The judge who issued the May 9, 1996, order was unavailable, so the parties appeared before another judge of the Oakland Circuit Court, who directed that the parties appear before the original judge on July 1, 1996. However, on June 26, 1996, presumably, in reaction to the intervening seizure and arrest, the same judge who directed that the parties appear on July 1, 1996, issued the show cause order and ordered the return of fireworks that were not needed for evidence and were not considered illegal.

The original circuit judge held the show cause hearing on July 1, 1996, and issued an order on July 3, 1996, reaffirming the May 9, 1996, order. The circuit court held that Peterson could continue to operate its business selling those fireworks not specifically enumerated as illegal by the Michigan fireworks statute, MCL 750.243a.[4] The order further indicated that "mines and shells" are not "of like construction" as "roman candles," and that the phrase "of like construction" is unconstitutionally vague. The circuit court order does reveal that the parties agreed that "Saturn missiles" would not be sold. The circuit court did not issue an order of contempt, and did not award damages for contempt.

On July 26, 1996, Peterson filed a motion for declaratory relief, seeking a ruling that MCL 750.243a, which prohibits the sale of certain fireworks, was unconstitutionally vague. On September 6, 1996, the circuit court granted the request for declaratory

---

[4] The relevant portion of MCL 750.243a, provides as follows:

(2) Except as provided in subsections (3) and (4) of this section and sections 243b, 243c, and 243d, a person, firm, copartnership, or corporation shall not offer for sale, expose for sale, sell at retail, keep with intent to sell at retail, possess, give, furnish, transport, use, explode, or cause to explode any of the following:

*       *       *

(c) Firecrackers, torpedoes, skyrockets, roman candles, daygo bombs, bottle rocket, whistling chaser, rockets on sticks, or other fireworks of like construction.

(d) Fireworks containing an explosive or inflammable compound or a tablet or other device commonly used and sold as fireworks containing nitrates, fulminates, chlorates, oxalates, sulphides of lead, barium, antimony, arsenic, mercury, nitroglycerine, phosphorus, or a compound containing these or other modern explosives.

relief.[5] On May 13, 1997, in accordance with the grant of declaratory relief, the state district court dismissed the criminal charges pending against plaintiff Barman and two Peterson employees. On July 31, 1998, the prosecutor's appeal of this dismissal was finally dismissed pursuant to a "dispositive stipulation" by the parties.

On June 29, 1999, plaintiffs brought a federal action against the city and Anger pursuant to 42 USC 1983, alleging a deprivation of property without due process of law under the Fifth Amendment and the Fourteenth Amendment, unreasonable seizure in violation of the Fourth Amendment, malicious prosecution in violation of the Fourth Amendment and the Fourteenth Amendment, First Amendment retaliation, false arrest (a state action), false imprisonment (a state action), and malicious prosecution (a state action) for constitutional violations arising from the actions that formed the basis of the 1995 circuit court suit.

On July 15, 2000, plaintiffs filed a motion with the Oakland Circuit Court in Case No. 95-498817-CZ for contempt, to reinstate the case, and to amend the complaint. The proposed amended complaint included claims nearly identical to those alleged in the federal suit.

---

[5] Subsequently, this Court effectively overturned this finding, and found that the statutory language was not unconstitutionally vague. See *Stajos v City of Lansing*, 221 Mich App 223, 237-238; 561 NW2d 116 (1997). This Court indicated that "[b]ecause helicopter-type rockets, mines and shells, ground spinners, wheels, illuminating torches, and new and novel items not specifically classified, but approved by [the United States Department of Transportation] as class C common fireworks, are not permitted by subsection 3 and they contain 'an explosive or inflammable compound,' they may not be lawfully sold or used without a permit." *Id.* at 234, quoting MCL 750.243a.

On August 4, 2000, the federal district court granted defendants' motion for judgment on the pleadings, holding that plaintiffs' claims were "inextricably intertwined" with issues earlier presented to the state court, and thus, were precluded by the *Rooker-Feldman* doctrine.[6] *Peterson Novelties, Inc v City of Berkley*, 2000 US Dist LEXIS 13028; 2000 WL 1279169 (ED Mich, 2000). Subsequently, plaintiffs appealed to the United States Court of Appeals for the Sixth Circuit.

On October 19, 2000, the Oakland Circuit Court in Case No. 95-498817-CZ denied plaintiffs' motion for contempt, to show cause, to reinstate the case, and to amend the complaint. The circuit court reasoned that the issues were properly before the Sixth Circuit, and that there was no compelling reason to reopen the matter when the issues could have been raised in a timely manner. The circuit court further noted that the delay caused undue prejudice and, thus, the motion should be denied. On November 1, 2000, plaintiffs' filed a motion for reconsideration of this order.

On November 14, 2000, plaintiffs filed the present action in Oakland Circuit Court pursuant to 42 USC 1983, 1988, and the federal and state constitutions.[7] Specifically, plaintiffs brought the following claims: Count I alleged federal claims of retaliation, unreasonable search and seizure, deprivation of property with-

---

[6] In accordance with *Rooker v Fidelity Trust Co*, 263 US 413; 44 S Ct 149; 68 L Ed 362 (1923), and *District of Columbia Court of Appeals v Feldman*, 460 US 462, 103 S Ct 1303, 75 L Ed 2d 206 (1983), courts expressly recognize the so-called *Rooker-Feldman* doctrine prohibiting appellate review of certain state court judgments by federal district courts. See *Anderson v Ypsilanti Twp*, 71 F Supp 2d 730, 731 (ED Mich, 1999).

[7] The complaint states that at the time of filing *Peterson Novelties, Inc v City of Berkley*, No. 95-498817-CZ, "arising out of the [sic] transactions or occurrences" was pending in Oakland Circuit Court.

out due process, and malicious prosecution; Count II alleged claims of false arrest and false imprisonment; and Count III alleged malicious prosecution.

On November 20, 2000, the Oakland Circuit Court denied plaintiffs' motion for reconsideration in Case No. 95-498817-CZ.

On November 27, 2001, the circuit court, in the present case, issued an opinion and order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). Specifically, the circuit court found that plaintiffs' issues were barred by res judicata, and that even if the claims for false arrest, false imprisonment, and malicious prosecution were not, plaintiffs failed to state a claim. On February 6, 2002, an order was entered adopting the reasons stated in the November 27, 2001, opinion and order, and granting defendants' motion for summary disposition and dismissing plaintiffs' claims.

On October 1, 2002, the Sixth Circuit affirmed the decision of the federal district court granting defendants' motion for judgment on the pleadings. *Peterson Novelties, Inc v City of Berkley*, 305 F3d 386, 397 (CA 6, 2002). Although finding the *Rooker-Feldman* doctrine inapplicable, the Sixth Circuit determined that several of the plaintiffs' allegations were identical to the allegations made in the emergency motion in the state circuit court, and that the doctrine of claim preclusion barred consideration of plaintiffs' claims because those claims either were decided by the circuit court or could have been brought in the 1995 circuit court action. *Id.* at 394-397. With regard to the unreasonable search and seizure, malicious prosecution, and false arrest or false imprisonment claims, the Sixth Circuit found that these claims were

precluded on the basis of the February 2, 2002, decision of the Oakland Circuit Court that resulted in this appeal.

II

Plaintiffs first argue on appeal that their claims are not precluded. We review rulings regarding motions for summary disposition de novo. *Van v Zahorik*, 460 Mich 320, 326; 597 NW2d 15 (1999). The circuit court opinion indicates that summary disposition was granted "based upon MCR 2.116(C)(7), (8), and (10)."[8] The applicability of res judicata is a question of law that is reviewed de novo on appeal. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 379; 596 NW2d 153 (1999).

Plaintiffs argue that res judicata does not apply, and that the circuit court erred in granting summary disposition on this basis. Res judicata requires that (1) the prior action was decided on the merits, (2) the decree in the prior action was a final decision, (3) the matter contested in the second case was or could have been resolved in the first, and (4) both actions involved the same parties or their privies. *Baraga Co v State Tax Comm*, 466 Mich 264, 269; 645 NW2d 13

---

[8] It appears that the circuit court granted summary disposition pursuant to MCR 2.116(C)(7) based on res judicata, but concluded, in the alternative, that summary disposition was also proper under MCR 2.116(C)(8) and (10). Accordingly, we will review the claims under MCR 2.116(C)(7), and if summary disposition is not proper we will determine whether it would be proper under MCR 2.116(C)(8) or (10). Summary disposition may be granted pursuant to MCR 2.116(C)(7) when a "claim is barred because of . . . prior judgment . . . or other disposition of the claim before commencement of the action." In reviewing a motion filed under this subrule, the Court accepts plaintiffs' well-pleaded factual allegations as true and construes all the documentary evidence in plaintiffs' favor. *Brennan v Edward D Jones & Co*, 245 Mich App 156, 157; 626 NW2d 917 (2001).

(2002); *Kosiel v Arrow Liquors Corp*, 446 Mich 374, 379; 521 NW2d 531 (1994). Michigan law defines res judicata broadly to bar litigation in the second action not only of those claims actually litigated in the first action, but also claims arising out of the same transaction that the parties, exercising reasonable diligence, could have litigated but did not. *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). In *Pierson Sand & Gravel, Inc, supra* at 380, quoting *Hackley v Hackley*, 426 Mich 582, 585; 395 NW2d 906 (1986), our Supreme Court stated that res judicata applies " 'to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.' " In addition, res judicata "bars relitigation of claims that are based on the same transaction or events as a prior suit." *Ditmore v Michalik*, 244 Mich App 569, 577; 625 NW2d 462 (2001); see also *Jones v State Farm Mut Automobile Ins Co*, 202 Mich App 393, 401; 509 NW2d 829 (1993). If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata. *Huggett v Dep't of Natural Resources*, 232 Mich App 188, 197-198; 590 NW2d 747 (1998); *In re Koernke Estate*, 169 Mich App 397, 399; 425 NW2d 795 (1988).

In 1996, the Oakland Circuit Court decided the issues brought before it in the emergency motion on the merits, and the proceedings resulted in a final order. Following the filing of the emergency motion for show cause and for contempt, the circuit court entered an order on July 3, 1996, reaffirming its temporary restraining order entered on May 9, 1996. On September 6, 1996, the circuit court granted permanent declaratory relief to Peterson. Peterson's emergency motion in June of 1996 made allegations similar

to those in the present complaint, and the actions arose out of the same incident. See *Dart, supra* at 586. In the emergency motion Peterson alleged that the city illegally seized fireworks contrary to a court order and conducted an improper search without a warrant. The current complaint, clearly, raises issues arising out of the same event. The same facts and evidence would sustain both the 1996 emergency motion and plaintiffs' current claims. *Huggett, supra* at 197-198; *In re Koernke Estate, supra* at 399. The 1996 emergency motion clearly resulted in a final decision on the merits. Peterson's claims of retaliation, deprivation of property, false arrest or false imprisonment, unreasonable search and seizure, and malicious prosecution arose out of the same transaction forming the basis of Peterson's emergency motion. Peterson's emergency motion in state court sought a contempt finding and damages against the city for the same acts that plaintiffs now allege violated their constitutional rights. The only remaining questions are whether these matters could have been decided in the initial case, and if the same parties or privies were involved.

Peterson and the city were parties to the prior circuit court actions. The present claims between these parties, which could have been brought earlier had plaintiffs exercised reasonable diligence, are clearly barred by res judicata. However, in the present case plaintiff Barman and defendant Anger were added as parties. The parties to the second action need be only substantially identical to the parties in the first action, in that the rule applies to both parties and their privies. *In re Humphrey Estate*, 141 Mich App 412, 434; 367 NW2d 873 (1985). Regarding private parties, a privy includes a person so identified in interest with

another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee. *Viele v DCMA*, 167 Mich App 571, 580; 423 NW2d 270, mod 431 Mich 898 (1988), on remand 211 Mich App 458 (1995). A privy includes one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase. *Wildfong v Fireman's Fund Ins Co*, 181 Mich App 110, 115; 448 NW2d 722 (1989). In order to find privity between a party and a nonparty, Michigan courts require "both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Phinisee v Rogers*, 229 Mich App 547, 553-554, 582 NW2d 852 (1998) (internal quotations omitted).

Plaintiffs argue that Barman was not a party to the original action and, thus, plaintiffs' claims are not precluded. Although we recognize that Barman was not a plaintiff in the original circuit court suit against the city, res judicata bars those of his claims that could have been brought with reasonable diligence, because he is the owner of Peterson, the named plaintiff in the circuit court suit. There has been no assertion by Barman that he was not in control of Peterson at any time and, thus, Barman's claims are also barred by res judicata.[9] *Viele, supra* at 580.

---

[9] Further, even if Barman was not the owner at the relevant time, a privy includes one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase. *Wildfong, supra* at 115.

Plaintiffs contend that defendant Anger was not a party to the original action and, thus, plaintiffs' claims are not be precluded. However, plaintiffs cite no authority for this contention. "A party may not leave it to this Court to search for authority to sustain or reject its position." *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996). An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998); *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 650; 662 NW2d 424 (2003), nor may he give issues cursory treatment with little or no citation of supporting authority, *Goolsby v Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984), after remand 211 Mich App 214 (1995). Argument must be supported by citation to appropriate authority or policy. MCR 7.212(C)(7); *Thomas v McGinnis*, 239 Mich App 636, 649; 609 NW2d 222 (2000); *Haefele v Meijer, Inc*, 165 Mich App 485, 494; 418 NW2d 900 (1987), remanded 431 Mich 853 (1988). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Therefore, this issue is abandoned. *Id.*; *Magee, supra* at 161.[10]

The remaining question with regard to whether res judicata bars plaintiffs' claims is whether the claims could have been decided in the first matter. Plaintiffs argue that res judicata does not apply because under

---

[10] We note that Anger would also, likely, be considered a privy since he was an agent of the city. See *Viele, supra* at 580. Furthermore, in later motions before the Oakland Circuit Court in Case No. 95-498817-CZ, though Anger was not named as a defendant, he was referred to as "Defendant City Detective Ray Anger."

*Heck v Humphrey*, 512 US 477; 114 S Ct 2364; 129 L Ed 2d 383 (1994), the claims could not be have been filed before the final dismissal on July 31, 1998, of the underlying criminal charges on which the claims were based. Thus, plaintiffs argue that these claims could not have been raised in the earlier proceedings. It is well-established that for § 1983 claims based on malicious prosecution, the statute of limitations does not begin to run until the underlying criminal action is terminated in favor of the accused. See *Heck, supra* at 486-489. A closer question is raised with regard to the other claims and in particular the unreasonable search and seizure and false arrest or false imprisonment claims. On the basis of Sixth Circuit case law, it is likely that plaintiffs' false arrest or false imprisonment[11] and unreasonable search and seizure claims would not have ripened until a favorable termination of the criminal proceedings occurred.[12] With regard to

---

[11] We note that plaintiffs' false arrest or false imprisonment claim and the state malicious prosecution claims are not § 1983 claims. However, based on the resolution of this case it is unnecessary to distinguish the Michigan claims from the § 1983 claims or determine the applicability of *Heck, supra*, to state claims of malicious prosecution and false arrest or false imprisonment.

[12] The Sixth Circuit has determined that a § 1983 action that would imply the invalidity of a future conviction does not accrue until the charges against the plaintiff are dismissed. *Shamaeizadeh v Cunigan*, 182 F3d 391, 396 (CA 6, 1999); *Schilling v White*, 58 F3d 1081, 1086 (CA 6, 1995). If the potential for conviction depends largely on seized evidence, the statute of limitations does not begin to run until the state dismisses the charges. *Shamaeizadeh, supra* at 398-99; see also *Brindley v Best*, 192 F3d 525, 530-31 (CA 6, 1999) (holding that claims should be precluded when the facts of plaintiffs' § 1983 claim would not imply invalidity of a conviction). Similar approaches have been taken in other federal circuits. See *Harvey v Waldron*, 210 F3d 1008, 1015-16 (CA 9, 2000) (requiring either a favorable termination or a determination that the claims will not imply the invalidity of a conviction before allowing a § 1983 illegal search and seizure claim to accrue); *Woods v Candela*, 47 F3d 545, 546 (CA 2, 1995). However, other federal circuits have held that the unreasonable search and seizure and false arrest or false imprisonment claims accrue

plaintiffs' retaliation and deprivation of property claims, these claims clearly arose out of the same transaction as Peterson's emergency motion, and are not the type of claims that would not ripen until after a criminal proceeding since they would not invalidate a conviction in any way. See *Heck, supra; Brindley v Best*, 192 F3d 525, 530-31 (CA 6, 1999). Thus, the trial court correctly determined that res judicata barred the retaliation and deprivation of property claims raised by plaintiffs.[13]

It is unnecessary to address whether res judicata bars the malicious prosecution, false arrest or false imprisonment, and unreasonable search and seizure claims, because summary disposition was proper under MCR 2.116(C)(10),[14] regardless of whether

immediately. See *Beck v Muskogee Police Dep't*, 195 F3d 553, 558-559 (CA 10, 1999) (holding that § 1983 illegal search and seizure claims accrue at the time of the search because *Heck, supra*, never barred plaintiff's illegal search and seizure claim, thus making that claim stale under the statute of limitations); *Copus v Edgerton*, 151 F3d 646, 648 (CA 7, 1998); *Booker v Ward*, 94 F3d 1052, 1057 (CA 7, 1996); *Datz v Kilgore*, 51 F3d 252, 253 n 1 (CA 11, 1995).

[13] We note that these issues are also barred by collateral estoppel because the federal court found that they should have been brought in the emergency motion. *Peterson Novelties, Inc, supra* at 394-395; *Pierson Sand & Gravel, Inc, supra* at 381.

[14] A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998); *Mino v Clio School Dist*, 255 Mich App 60, 67; 661 NW2d 586 (2003). When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999). A motion for summary disposition based on the lack of a material factual dispute must be supported by documentary evidence. MCR 2.116(G)(3)(b), *Meyer v Center Line*, 242 Mich App 560, 574; 619 NW2d 182 (2000). When the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rest upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial that is material to the dispositive legal claims. *Quinto v*

these claims are barred by res judicata. The circuit court did state MCR 2.116(C)(10) as a basis for its grant of summary disposition, but even if it did not decide the case on this basis, we will not reverse a trial court's order if it reaches the right result for the wrong reason. *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 470; 628 NW2d 577 (2001).

The trial court did not err in granting defendants' motion for summary disposition of plaintiffs' false imprisonment or false arrest claim, because summary disposition was proper under MCR 2.116(C)(10).[15] False imprisonment has been defined by this Court as an unlawful restraint on a person's liberty or freedom of movement. *Clarke v Kmart Corp*, 197 Mich

---

*Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001); *State Farm Fire & Cas Co v Johnson*, 187 Mich App 264, 267; 466 NW2d 287 (1991). Speculation and conjecture are insufficient, but an opposing party need not rebut every possible theory that the evidence could support. *Detroit v Gen Motors Corp*, 233 Mich App 132, 139; 592 NW2d 732 (1998).

[15] In *Lewis v Farmer Jack Div, Inc*, 415 Mich 212; 327 NW2d 893 (1982), the dissent noted:

> False arrest and false imprisonment are often used interchangeably, Prosser, Torts (4th ed), § 11, p 42, although there is technically a difference between the two actions.

> "False arrest and false imprisonment as causes of action are said to be distinguishable only in terminology. The difference between them lies in the manner in which they arise. It is not necessary, to commit false imprisonment, either to intend to make an arrest or actually to make an arrest. However, a person who is falsely arrested is at the same time falsely imprisoned, and an unlawful arrest may give rise to a cause of action for either false arrest or false imprisonment. Thus, it has been stated that false arrest and false imprisonment are not separate torts, and that a false arrest is one way to commit false imprisonment; since an arrest involves a restraint, it always involves imprisonment."

[*Id.* at 231 n 4 (WILLIAMS, J., dissenting), quoting 32 Am Jur 2d, False Imprisonment, § 2, pp 59-60, and citing 35 CJS, False Imprisonment, § 2, p 624.]

App 541, 546; 495 NW2d 820 (1992). A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person arrested is irrelevant. *Lewis, supra* at 218. To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause. *Id.*; *Burns v Olde Discount Corp*, 212 Mich App 576, 581; 538 NW2d 686 (1995); *Tope v Howe*, 179 Mich App 91, 105; 445 NW2d 452 (1989). If the arrest was legal, there has not been a false arrest or a false imprisonment. *Tope, supra* at 105. Whether the plaintiff could actually have been convicted is irrelevant because actual innocence is not an element of false arrest. *Lewis, supra* at 218 n 1; *Brewer v Perrin*, 132 Mich App 520, 527; 349 NW2d 198 (1984). The Court in *Lewis* explained the general rule and its limitations:

> "[I]t must be a false arrest, *made without legal authority.* One who instigates or participates in a lawful arrest, as for example an arrest made under a properly issued warrant by an officer charged with the duty of enforcing it, may become liable for malicious prosecution, as stated in Chapter 29, or for abuse of process, as stated in Chapter 31, but he is not liable for false imprisonment, since no false imprisonment has occurred." [*Lewis, supra* at 218 n 2, quoting 1 Restatement Torts, 2d, § 45A, p 69, Comment b (emphasis added by *Lewis, supra*).]

In the present case, the circuit court found that "ample" probable cause existed for the arrests. Where the facts are undisputed, the determination whether probable cause exists is a question of law for the court to decide. *Matthews v Blue Cross & Blue Shield of Michigan*, 456 Mich 365, 381-382; 572 NW2d 603 (1998); *Hall v Pizza Hut of America, Inc*, 153 Mich

App 609, 615; 396 NW2d 809 (1986). None of the alleged factual disputes create a factual question regarding whether probable cause existed. Anger purchased fireworks that were possibly illegal under Michigan law, since he purchased "Saturn Missiles" and fireworks known as "mines and shells." The May 9, 1996, order permitted Peterson to sell fireworks not prohibited by MCL 750.243a(2)(C). The only factual dispute is whether these fireworks were prohibited, which has already been determined. Because no factual dispute existed, it was proper for the trial court to determine whether probable cause existed. Probable cause that a particular person has committed a crime " 'is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged.' " *People v Coutu (On Remand)*, 235 Mich App 695, 708; 599 NW2d 556 (1999), quoting *People v Tower*, 215 Mich App 318, 320; 544 NW2d 752 (1996). Probable cause is not capable of being precisely defined; rather, it is a commonsense concept dealing with practical considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons, not legal technicians. *Ornelas v United States*, 517 US 690, 695-696; 116 S Ct 1657; 134 L Ed 2d 911 (1996).

There was probable cause at the time of the arrests and when the fireworks were placed in storage. Anger and other city officials were acting on the basis of a statute that the circuit court later found unconstitutionally vague. The record reveals that the items termed "mines and shells" were not considered of "of like construction" to "roman candles" and that the "of

like construction" language was unconstitutionally vague. The statute was later upheld by this Court, which concluded that "mines and shells" were the type of fireworks that were prohibited without a permit. See *Stajos, supra* at 235-238. The circuit court order did state that there was an agreement by Peterson not to sell "Saturn Missiles," a type of firework that was purchased by Anger.[16] Furthermore, even if the statute was unconstitutional, which it is not, defendant still had probable cause at the time of the arrests. In *Pierson v Ray*, 386 US 547, 548-552; 87 S Ct 1213; 18 L Ed 2d 288 (1967), persons who had been arrested for violating a statute later declared unconstitutional sought damages for false arrest under state law and for a violation of the Fourteenth Amendment under § 1983. The Supreme Court, in holding that a police action based on a presumptively valid law was subject to a valid defense of good faith, found that a police officer who arrests someone with probable cause is not liable for false arrest simply because a statute that he reasonably believed to be valid was later held unconstitutional, on its face or as applied. *Pierson, supra* at 555-557. Here, Anger and other city officials had probable cause to arrest Peterson's employees, and the fact that the statute was

---

[16] We note that this Court recognized in an unpublished opinion that "saturn missiles . . . arguably fall within the 'and like construction' language of the statute." *People v Linn*, unpublished opinion per curiam of the Court of Appeals, issued November 14, 1997 (Docket No. 200197), quoting MCL 750.243a(2)(C). This Court also indicated that an undercover officer who purchased "saturn missiles" and other similar fireworks "had probable cause to believe that defendants were selling these fireworks in violation of the statute." *Id.* We use the unpublished opinion as a guide because of the limited case law on the subject matter; however, unpublished opinions are not precedentially binding under the rule of stare decisis. MCR 7.215(C)(1).

later found unconstitutionally vague did not negate probable cause. In addition, the state district court issued search warrants pursuant to Anger's affidavit regarding what he purchased at plaintiffs' fireworks tent. There was no error in the circuit court's conclusion that probable cause existed to arrest Barman and the other employees. Accordingly, the false arrest or false imprisonment claims were properly dismissed under MCR 2.116(C)(10) because probable cause existed.

In the state malicious prosecution action, plaintiffs had the difficult burden of proving four elements: "(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Matthews, supra* at 378. "Generally, courts have held that where termination results from a compromise or settlement or is brought about by an action of the accused as a courtesy or favor or by some act of the accused that prevents the litigation, there is no favorable termination that will serve as a basis for a cause of action for malicious prosecution." *Cox v Williams*, 233 Mich App 388, 394; 593 NW2d 173 (1999). In the present case, a "dispositive stipulation" entered into by Barman dismissed the charges against him and the other Peterson employees who were arrested. "This dispositive stipulation" did not amount to a favorable termination. Therefore, we find, after reviewing the matter de novo, that

plaintiffs' claim for malicious prosecution under Michigan law was properly dismissed.[17]

With regard to the federal, Fourth Amendment malicious prosecution claim, the Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment. *Thacker v Columbus*, 328 F3d 244, 259 (CA 6, 2003). Although the Sixth Circuit has yet to determine the elements of a federal malicious prosecution claim, it is clear that a plaintiff must show, at a minimum, "that there was no probable cause to justify [the] arrest and prosecution." *Darrah v Oak Park*, 255 F3d 301, 312 (CA 6, 2001). Here, the arrest and prosecution of Barman and the other employees were justified by probable cause. *Id.* As determined above there was probable cause for the arrest because plaintiffs were selling "saturn missiles" and "mines and shells," which were potentially prohibited by MCL 750.243a. Because plaintiffs cannot show the absence of probable cause, the federal malicious prosecution claim was properly dismissed. Consequently, we find, after reviewing the issue de novo, that plaintiffs cannot show the absence of probable cause and, thus, the federal malicious prosecution claim was properly dismissed under MCR 2.116(C)(10).

---

[17] Further, despite the fact that the warrant may not have been issued without the information provided by defendants, the prosecution was initiated on the basis of an independent exercise of prosecutorial discretion. *Matthews, supra* at 386. The prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is generally a complete defense to an action for malicious prosecution. *Id.* at 384. Thus, plaintiffs have not established a claim for malicious prosecution because they have not (and cannot) prove that defendants initiated, instituted, or maintained the prosecution against them.

Plaintiffs appear to argue that the purchase of the fireworks, the requirement that the fireworks be placed in a storage bin, and the arrest of plaintiffs' employees amounted to unreasonable searches and seizures under the Fourth Amendment. With regard to unreasonable searches and seizures, the Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." US Const, Am IV.

In *Pierson, supra* at 555, the United States Supreme Court held that police officers would not be liable in an action brought under § 1983 "if they acted in good faith and with probable cause . . . ." Consistent with this guarantee, an officer may make an arrest without a warrant so long as there is probable cause for the arrest. See *Michigan v DeFillippo*, 443 US 31, 36; 99 S Ct 2627; 61 L Ed 2d 343 (1979). "Probable cause justifying an arrest 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Estate of Dietrich v Burrows*, 167 F3d 1007, 1010-11 (CA 6, 1999), quoting *DeFillippo, supra* at 37. As we determined above, there was probable cause for the arrests. Further, going into a commercial place open to the public and purchasing items, like the fireworks in this case, does not violate a person's reasonable expectation of privacy. See *Bonds v Cox*, 20 F3d 697, 701 (CA 6, 1994); *People v Custer (On Remand)*, 248 Mich App 552, 561; 640 NW2d 576 (2001); *People v Hulsey*, 176 Mich App 566, 569; 440 NW2d 59 (1989).

In addition, the fireworks purchased in plaintiffs' tent, and thought to be illegal, were in plain view and, thus, any seizure was justified. See *United States v Roark*, 36 F3d 14, 18 (CA 6, 1994); *People v Blasius*, 435 Mich 573, 582; 459 NW2d 906 (1990); *People v Brzezinski*, 243 Mich App 431, 433; 622 NW2d 528 (2000). Because plaintiffs cannot show a violation of a reasonable expectation of privacy, or the absence of probable cause, and the fact that the fireworks were stored and not seized pursuant to agreement until a warrant was obtained, there is no evidence of a violation of the Fourth Amendment. Accordingly, after our review de novo, we find that summary disposition under MCR 2.116(C)(10) is proper regarding this claim.

Plaintiffs also argue in their reply brief, with regard to the malicious prosecution and false arrest or false imprisonment claims, that the lower court should have allowed discovery regarding whether a material misrepresentation was made by defendants to the magistrate who issued the warrant. However, "[f]ailure to include all exculpatory facts is not adequate to sustain a suit for malicious prosecution." *Payton v Detroit*, 211 Mich App 375, 395; 536 NW2d 233 (1995). What is required is evidence that gives rise to an inference that the defendant knowingly included false facts in his affidavit, without which facts the prosecutor could not have concluded there was probable cause. *Matthews, supra* at 390; *Payton, supra* at 395. The facts surrounding the entry and actions of Anger are not disputed. Regardless of the circuit court's May 9, 1996, order, probable cause existed. Generally, a motion for summary disposition is premature if granted before discovery on a dis-

puted issue is complete. *Townsend v Chase Manhattan Mortgage Corp*, 254 Mich App 133, 140; 657 NW2d 741 (2002); *Jordan v Jarvis*, 200 Mich App 445, 452; 505 NW2d 279 (1993). However, summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position. *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000). We find that summary disposition is appropriate under MCR 2.116(C)(10) regarding plaintiffs' malicious prosecution and false arrest or false imprisonment claims because further discovery did not stand a reasonable chance of uncovering factual support for plaintiffs' position. *Village of Dimondale, supra* at 566.

III

Defendants' motion for summary disposition was properly granted with regard to all of plaintiffs' claims on the basis of either MCR 2.116(C)(7) or (10).[18]

Affirmed.

---

[18] We note that given our resolution, it is unnecessary to address the statute of limitations, governmental immunity, and collateral estoppel issues.