# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF ROYAL OAK,

        Plaintiff-Appellee,

v

JANICE BRINKLEY,

        Defendant-Appellant,

and

CHARTER TOWNSHIP OF ROYAL OAK
CLERK,

        Defendant.

UNPUBLISHED
May 18, 2017

No. 331317
Oakland Circuit Court
LC No. 2013-136281-AW

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant Janice Brinkley, the former Royal Oak Township Clerk, appeals as of right the trial court's order denying her motion for costs and attorney fees under MCR 2.114(D) and (E). Because we conclude that the trial court's findings were not clearly erroneous, we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This matter is before this Court following remand to the trial court by a prior panel. Defendant originally sought costs and attorney fees following an entry of summary disposition in her favor. Defendant's motion contended that plaintiff's complaint was frivolous and that certain identified documents were signed in bad faith. The trial court ruled on the motion but only with regard to whether the complaint was frivolous. On appeal to this Court, the panel affirmed the trial court's order with regard to whether the complaint was frivolous, but it remanded for the trial court to address "the fact-specific inquiry concerning whether the identified documents were signed in bad faith." *Charter Twp of Royal Oak v Brinkley*, unpublished opinion per curiam of the Court of Appeals, issued December 3, 2015 (Docket No. 324197), p 3 (*Brinkley I*). The instant case concerns the trial court's denial of defendant's motion on remand.

-1-

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews the trial court's factual findings on a motion for sanctions for clear error. *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015); *Edge v Edge*, 299 Mich App 121, 127; 829 NW2d 276 (2012). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002).

### B. MCR 2.114

Defendant argues that she was entitled to sanctions under MCR 2.114(D) and (E). MCR 2.114(D) provides that a party's or attorney's signature on an affidavit, pleading, motion, or other document certifies:

> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

MCR 2.114 imposes "an affirmative duty to conduct a reasonable inquiry into the factual and legal viability" of documents before they are signed. *LaRose Market, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995). "The reasonableness of the inquiry is determined by an objective standard and depends on the particular facts and circumstances of the case." *Id*.

In this case, defendant's allegations implicate MCR 2.114(D)(2) because, although defendant argues that certain identified documents were signed in "bad faith," the crux of her allegations is that those documents were not well grounded in fact and/or were not warranted by existing law. "The filing of a signed document that is not well grounded in fact and law subjects the filer to sanctions pursuant to MCR 2.114(E)." *Guerrero v Smith*, 280 Mich App 647, 678; 761 NW2d 723 (2008). The imposition of sanctions for a violation of MCR 2.114(D) is mandatory. *Kaeb*, 309 Mich App at 565.

This case originally arose out of plaintiff's complaint alleging that defendant, in her role as township clerk, failed to perform a number of her duties and/or willfully ignored some of her duties. Defendant's claims implicate a number of documents filed by plaintiff, including: (1) claims related to statements made in Township Supervisor Donna Squalls's September 7, 2013 affidavit attached to the complaint; (2) claims related to plaintiff's complaint; (3) claims related to plaintiff's April 16, 2014 Motion to Show Cause; and (4) claims related to plaintiff's response to defendant's motion for summary disposition. In addition, defendant argues for the first time on appeal that plaintiff should have been sanctioned for failing to dismiss the action.

## C. CLAIMS PERTAINING TO SQUALLS'S AFFIDAVIT

### 1. EVIP FUNDING AND REPORTS TO TREASURY

Defendant first argues that Squalls's affidavit was signed in bad faith because of false allegations contained therein concerning an application that defendant made to the Department of Treasury for $50,000 in Economic Vitality Incentive Program (EVIP) funding in February 2013. Defendant identified ¶¶ 3-4 of the affidavit as the allegedly false statements. Those paragraphs provide:

> 3. The Michigan Department of Treasury requires monthly financial reports to be submitted and failure to do so accurately and timely results in loss of revenue funds and causes the Township to face emergency financial management.

> 4. As part of her statutory duties, the Township Clerk was to properly submit these monthly reports in accordance with the State EVIP guidelines and has to date failed to do so.

Defendant argues that Squalls falsely asserted that defendant's late filing of financial reports with the Department of Treasury was the cause of plaintiff's loss of $50,000 in EVIP funding. According to defendant, the EVIP application was due on February 1, 2013, and Squalls knew that the Department of Treasury did not require the submission of monthly reports until April 2013. Hence, according to defendant, any assertion by Squalls that the failure to submit monthly reports to the Department of Treasury caused plaintiff to lose EVIP funding was false.

We decline to find clear error on this claim. Defendant admitted that she failed to timely attach certain unidentified documents to the EVIP application at issue, thereby resulting in the loss of $50,000 in funds. At most, defendant is arguing that plaintiff potentially misidentified the documents she failed to submit in her application for EVIP funding. This does not demonstrate clear error by the trial court.

### 2. SHREDDING PUBLIC DOCUMENTS

Next, defendant takes issue with Squalls's statement in ¶ 7 of her affidavit that defendant was "shredding public records without the knowledge of the Board." According to defendant, this statement was false because the Township Board knew, by way of a resolution it passed, that defendant would be shredding documents. And defendant notes that Squalls admitted in her deposition that she did not know whether the documents were required to be kept by law. According to defendant, this admission shows that ¶ 7 was not well grounded in fact and was made in bad faith.

We decline to find clear error on the record before us. Throughout the trial court proceedings, defendant freely admitted that she shredded township documents. She only disputed whether she was required by law to keep the documents. Squalls's affidavit, meanwhile, merely states that, instead of attending a township meeting, "it was discovered the Township Clerk was at the Township shredding public records without the knowledge of the Board." Squalls did not allege that defendant shredded documents that were required to be kept.

She merely asserted that defendant shredded documents without the knowledge of the Township Board. In her deposition, Squalls testified that she knew defendant shredded township documents, but she testified that she did not know the substance of the documents or whether defendant shredded anything she should have kept pursuant to record retention policies. In other words, Squalls testified that she knew defendant shredded documents, but Squalls, who was a Board member, did not know what those documents were. In light of this testimony, we are not left with a definite and firm conviction that the trial court made a mistake. Indeed, this testimony supports the notion that defendant shredded at least *some* documents without the Board's knowledge.

### 3. ACCESS TO THE FUND BALANCE SOFTWARE PROGRAM

Next, defendant argues that Squalls made false assertions in her affidavit with regard to the issue of "read access" and "write access" to the township's "Fund Balance" software program. Defendant argues that Squalls's affidavit falsely claimed that defendant "failed to give [Squalls] read and write access to all of Fund Balance contrary to her authority and a resolution passed by the Township Board allowing such access." However, Squalls's affidavit does *not* state that defendant acted contrary to the resolution. Rather, Squalls's affidavit simply states that defendant denied Squalls access *and* that the Township Board passed a resolution regarding Fund Balance access. There does not appear to be any dispute that defendant blocked *some* access to Fund Balance before the resolution was passed. Thus, the record before this Court does not support the conclusion that the trial court clearly erred.

### 4. DIRECTIONS TO THE TOWNSHIP DEPUTY CLERK

Defendant next argues that Squalls falsely asserted in ¶ 10 of her affidavit that defendant directed the deputy clerk not to act in her absence. Paragraph 10 of the affidavit provides that "the Township Clerk's deputy has been directed not to comply with her statutory duties to act in the stead of the Township Clerk . . . ." Defendant cites an affidavit from a former deputy clerk, Ida Reynolds, who averred that defendant never instructed her not to act. Citing Reynolds's affidavit, defendant argues that Squalls's assertions to the contrary were false and that they were made in bad faith. Defendant also argues that Squalls admitted she could not recall any instance when the deputy clerk refused to act.

On the record before this Court, defendant cannot show clear error. When asked about ¶ 10 of her affidavit, Squalls testified at her deposition that:

> There was one time—and I can't recall what it was now—but [the deputy clerk] said, "[defendant] told me not to do"—I can't recall what it was, but [the deputy clerk] did tell me to my face that [defendant] told her not to do something that I asked her. I asked for information and "[defendant] told me not to give it to"—or something.

Squalls also testified that she could not recall the specific subject matter of the refusal. Contrary to defendant's suggestions on appeal, Squalls did not testify in her deposition that she did not know whether the averment was true; rather, she testified that she could not recall the subject of the refusal to act. In sum, other than Reynolds's denial, defendant has not presented any

evidence suggesting that Squalls knew her averment in ¶ 10 was false. The conflicting accounts of Squalls and Reynolds do not demonstrate a clearly erroneous factual finding by the trial court.

## 5. APPOINTMENT OF TRUSTEE AS ACTING CLERK

The final statement with which defendant takes issue from Squalls's affidavit is the averment in ¶ 11 in which Squalls stated that "unless Plaintiff is permitted to appoint a Trustee to act as the Township Clerk in the interim, the Township will be unable to function and operate." Defendant argues that there is no evidence that she failed to perform her duties as clerk. Moreover, she argues that there is no evidence that the deputy clerk refused to act; thus, according to defendant, even if she failed to perform her duties as clerk, the township could still function without the appointment of a trustee as an interim clerk.

The record before this Court does not demonstrate clear error. As it concerns defendant and her refusal to take certain actions, the record reveals that defendant admittedly failed to sign certain township resolutions that she deemed were not ready for implementation for one reason or another. Squalls's affidavit expressly mentioned defendant's failure to sign resolutions as one of the reasons why plaintiff requested the appointment of an interim clerk. Moreover, defendant admittedly failed to attach documentation to an application for EVIP funding, and, as noted above, Squalls testified that she had at least some reason to believe that defendant had instructed the deputy clerk not to act.

## D. CLAIMS PERTAINING TO PLAINTIFF'S COMPLAINT

According to defendant, plaintiff's complaint was not well grounded in fact because "[t]he record is clearly contrary" to certain allegations set forth in the complaint. Defendant lists six allegations, without expressly citing the complaint, and concludes, in cursory fashion, that plaintiff knew or should have known that the allegations were false. Given defendant's cursory treatment of her claims, we consider the claims to be abandoned. See *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue."). Moreover, on our review of the record, we are not left with a definite and firm conviction that the trial court's factual finding was mistaken.

## E. CLAIMS PERTAINING TO PLAINTIFF'S APRIL 16, 2014 SHOW-CAUSE MOTION

Defendant next argues that plaintiff's April 16, 2014 show-cause motion was signed in bad faith because it advocated a position that was not warranted by existing law. This motion concerned defendant's alleged failure to call two special meetings that Squalls had requested. Squalls requested the first special meeting with approximately 22 hours' notice, rather than the 24 hours required by MCL 42.7. Squalls requested the second special meeting via text message, which the trial court in this case found did not satisfy MCL 42.7's requirement that such requests be made "in writing." According to defendant, had plaintiff's attorney reviewed MCL 42.7 before filing the show-cause motion, he would have realized that the claims made therein were not warranted by existing law.

As it concerns special meetings of a township board, MCL 42.7(2)-(3) provide:

(2) A special meeting of the township board shall be called by the township clerk pursuant to subsection (3) on the *written request of the supervisor* or of 2 members of the township board and *on at least 24 hours' written notice to each member of the township board*. The notice shall designate the time, place, and purpose of the meeting and shall be served personally or left at the member's usual place of residence by the township clerk or someone designated by the township clerk.

(3) The business that the board may perform shall be conducted at a public meeting of the board held in compliance with the open meetings act, Act No. 267 of the Public Acts of 1976, being sections 15.261 to 15.275 of the Michigan Compiled Laws. Public notice of the time, date, and place of the meeting shall be given in the manner required by Act No. 267 of the Public Acts of 1976. [Emphasis added.]

Defendant is correct that a township meeting "shall" be called on 24 hours' notice to the township board members, though the provision is silent on whether a member can waive the requirement that advanced notice be given to him or her. That waiver may be permitted is suggested by the fact that public notice of a special meeting under the open meetings act must be posted only "at least 18 hours before the meeting." MCL 15.265(4). Given this shorter requirement for public notice, it is arguable that the 24-hour requirement could be waived, and that a valid meeting could be held as long as the 18-hour public notice requirement of the open meetings act was met. Here, the 22-hour notice given by Squalls fits within that timeframe. That a legal position does not prevail does not mean that the argument was not warranted by existing law.[1] *Sprenger v Bickle*, 307 Mich App 411, 424; 861 NW2d 52 (2014).

As it concerns the special meeting that Squalls requested by text message, MCL 42.7(2) provides that a meeting request must be "in writing," without defining the phrase "in writing." Neither party has directed this Court's attention to binding authority on the interpretation of the phrase "in writing" as it is used in this statute. Thus, there could be an argument made that a text message would qualify as written notice. In fact, the prior panel in this case, in addressing arguments raised by plaintiff's cross-appeal, expressly declined to resolve the question of whether a text message constituted written notice under MCL 42.7(2). *Brinkley I*, unpub op at 7-8. In doing so, the panel noted that there was a "lack of clarity concerning where emerging technology such as text messages fits into existing statutory definitions concerning 'written requests' or 'writings.' " *Id*. The concern identified by the prior panel highlights that there is arguable merit to the claim that a text message would satisfy the "in writing" requirement of MCL 42.7(2). That the trial court denied plaintiff's motion to hold defendant in contempt for failing to call a meeting pursuant to a text message request does not mean that plaintiff's motion was not warranted by existing law. See *Sprenger*, 307 Mich App at 424.

---

[1] Because the question of whether a member can waive the right to 24-hour advanced notice need not be answered for proper resolution of this appeal, we will decline to address it further.

## F. CLAIM PERTAINING TO PLAINTIFF'S RESPONSE TO SUMMARY DISPOSITION

Defendant next argues that plaintiff's assertion concerning defendant's adherence to a township resolution regarding mail protocol in its response to her motion for summary disposition was made in bad faith. As context for this claim, trial counsel for plaintiff, who also served as plaintiff's general counsel, had previously provided an opinion to Squalls and other board members in March 2013 regarding "the Township Clerk's legal duties as they relate to the receiving and opening of mail addressed to the Charter Township of Royal Oak and mail addressed to individuals at the Township's business address." After reviewing pertinent authorities, counsel opined that the township clerk was "legally authorized to accept and open all mail addressed to the Charter Township of Royal Oak and any mail addressed to individuals at the Township's business address." Shortly after receiving counsel's letter, the Township Board passed a resolution requiring defendant to refrain from opening mail addressed "to a specific person or office other than the Township." In an October 30, 2013 deposition, defendant testified that she was aware of the resolution, but she nevertheless opened all mail she received "because it's my statutory duty." She testified that she would open all mail that was delivered to the township offices, regardless of whether it was addressed to another individual and regardless of whether it was marked personal or confidential. She testified that she would not follow the resolution regarding mail protocol.

As it concerns defendant's instant claims, she argues that, given counsel's opinion, as well as MCL 41.65 and this Court's decision in *McKim v Green Oak Twp Bd*, 158 Mich App 200; 404 NW2d 658 (1987), it "was bad faith" for plaintiff to allege that defendant breached her duties by violating the township resolution that was "clearly contrary" to the March 2013 letter from counsel.

In pertinent part, MCL 41.65 provides that "[t]he township clerk of each township shall have custody of all the records, books, and papers of the township, when no other provision for custody is made by law." In *McKim*, 158 Mich App at 205, this Court held that the term "papers" as used in that section includes mail delivered to the township. "Hence, it seems clear that MCL 41.65 . . . bestows a township clerk with the responsibility to exercise control over all township papers, including mail and bills, unless otherwise provided for by law." *Id*. At issue in *McKim* was whether a township could enact a resolution permitting the township secretary, rather than the clerk, to receive all incoming mail. *Id*. at 201-202. This Court held that a resolution bypassing the township clerk entirely deprived the clerk of his or her duty under MCL 41.65 to have "custody of all . . . papers of the township . . . ." *Id*. at 205.

Turning to the instant case, the trial court did not clearly err in finding that the accusation made in plaintiff's response regarding defendant's lack of compliance with the mail protocol ordinance was not made in bad faith. At the outset, regardless of any opinion given by the township's general counsel, the Township Board passed a resolution requiring defendant not to open mail she received if it was addressed to someone else, and defendant openly defied that resolution. As plaintiff argues, the township has an interest in seeing that resolutions passed by its board are followed. Moreover, the law cited by defendant is not as clear as defendant represents it to be. As it concerns the instant case, neither *McKim* nor MCL 41.65 expressly gives a township clerk authority to open all mail that is delivered to the township. Rather, the authorities give a clerk "custody" over the mail. It is not apparent that "custody" means a clerk

can open mail addressed to anyone, regardless of the subject of the mail. Furthermore, there is little caselaw interpreting MCL 41.65, and the decision in *McKim* could be considered nonbinding because it was issued before November 1, 1990. See MCR 7.215(J)(1). Contrary to defendant's assertions, plaintiff's position regarding mail protocol was at least arguably warranted by existing law, and defendant fails to establish clear error.

## G. CLAIM PERTAINING TO AN ALLEGED "FAILURE TO DISMISS"

For her final claim, defendant argues that plaintiff should be sanctioned "pursuant to MCR 2.114 for failing to dismiss" when it knew it had no case against defendant. Defendant failed to preserve this claim for appellate review because she did not raise it before the trial court. See *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). We decline to address this issue raised for the first time on appeal. *City of Fraser v Almeda Univ*, 314 Mich App 79, 104; 886 NW2d 730 (2016). Moreover, we have reviewed the claim and found it to be without merit.

## III. CONCLUSION

Defendant failed to show that the trial court's factual findings were clearly erroneous. Accordingly, we affirm the trial court's order denying defendant's motion for costs and attorney fees.[2]

Affirmed.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

---

[2] We note that, in passing, plaintiff appears to argue that defendant should be sanctioned for filing a vexatious appeal. Given the cursory attention plaintiff gives to this matter, we find it to be abandoned. See *Peterson Novelties*, 259 Mich App at 14. Moreover, because this cursory request is made in plaintiff's brief, rather than in a separate motion, "the request is ineffectual" and should not be considered at this time. *Fette v Peters Constr Co*, 310 Mich App 535, 553; 871 NW2d 877 (2015).