*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Parole of RICHARD MCBRAYER.

---

MACOMB COUNTY PROSECUTOR,

      Appellee,

v

RICHARD MCBRAYER,

      Other Party,

and

MICHIGAN PAROLE BOARD,

      Appellant.

UNPUBLISHED
August 29, 2019

No. 346841
Macomb Circuit Court
LC No. 2018-000058-AP

---

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

Appellant, the Michigan Parole Board (the Board), appeals by leave granted[1] the circuit court's November 26, 2018 opinion and order reversing the Board's June 18, 2018 decision to parole Richard McBrayer. We affirm.

---

[1] See *In re Parole of McBrayer*, unpublished order of the Court of Appeals, entered February 5, 2019 (Docket No. 346841).

## I. BACKGROUND

This is the second appeal involving the Parole Board's decision granting McBrayer parole. In 1994, McBrayer was charged with five counts of first-degree criminal sexual conduct, MCL 750.520b(1)(b), and he pleaded guilty to two of the those counts. McBrayer was sentenced to two concurrent terms of 20 to 40 years' imprisonment. The convictions arose from McBrayer's sexual abuse of his stepdaughter (the victim), allegedly beginning in 1990 and continuing until September 1993. In 2015, the Board voted to grant McBrayer parole, and he was released on parole from January 2016 to April 2018. However, the circuit court reversed the Board's decision to parole McBrayer. This Court affirmed the circuit court's decision. *In re Parole of McBrayer*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2017 (Docket No. 336084) (*McBrayer I*). In April 2018, our Supreme Court denied the Board's application for leave to appeal this Court's decision in *McBrayer I. In re Parole of McBrayer*, 501 Mich 1038 (2018) (*McBrayer II*). In light of our Supreme Court's denial of leave to appeal, the Board rescinded McBrayer's parole, and he was returned to custody in April 2018. However, just two months later, on June 18, 2018, the Board again voted to grant McBrayer parole. His release was stayed pending appeal. On November 26, 2018, the circuit court reversed the Board's June 18, 2018 decision to grant parole. The Board then commenced the present appeal in this Court.

## II. ANALYSIS

The Board argues on appeal that the circuit court erred in concluding that the Board clearly abused its discretion in its June 18, 2018 decision to parole McBrayer. We disagree.

A party challenging the Board's decision to grant parole has the burden of establishing a clear abuse of discretion or a violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation. MCR 7.118(H)(3); *In re Elias*, 294 Mich App 507, 538; 811 NW2d 541 (2011). An abuse of discretion occurs when the Board's decision falls outside the range of reasonable and principled outcomes. *Elias*, 294 Mich App at 538. "[A] reviewing court may not substitute its judgment for that of the Board." *Id*. at 538-539.

In general, parole matters lie solely within the Board's broad discretion. *Id*. at 521. Nonetheless, "the Legislature has clearly imposed certain statutory restrictions on the Board's exercise of its discretion." *Id*. at 521-522. "Most importantly, '[a] prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety.' " *Id*. at 522, quoting MCL 791.233(1)(a) (brackets in *Elias*).[2] When calculating a prisoner's parole guidelines score, the Board is to consider the sentencing offense but must also take into account "the prisoner's rehabilitation and evolution throughout his or her incarceration." *Elias*, 294 Mich App at 544. "A prisoner with a

---

[2] MCL 791.233(1)(a) was amended in 2017 to replace the word "shall" with "must." See 2017 PA 14, effective June 29, 2017.

[parole guidelines] score of +3 or greater merits placement in the high-probability [of parole] category[.]" *Id*. at 518. "The Legislature recognized, however, that in some circumstances the parole guidelines fail to take into account adequate information." *Id*. at 522. Therefore, the Board has discretion to depart from the parole guidelines on the basis of substantial and compelling reasons stated in writing. *Id*. In so doing, the Board may rely on objective facts as well as subjective findings, including those related to a prisoner's social attitude. *Id*. at 543-544.[3] "An evaluation of a prisoner's mental and social attitude involves a subjective determination for which the parole guidelines cannot account." *Id*. at 543.

In 2018, McBrayer received a score of +11 under the parole guidelines, the same score he received when he was previously granted parole in 2015. See *McBrayer I*, unpub op at 4. Therefore, as in 2015, the Board in 2018 was authorized to depart from the parole guidelines only if there were substantial and compelling reasons to do so. In *McBrayer I*, this Court determined that substantial and compelling reasons for a departure existed with respect to the 2015 parole decision. See *id*. Because there have been no improvements in the relevant facts and circumstances since the 2015 parole decision, substantial and compelling reasons for a departure also existed with respect to the 2018 parole decision.

Although the nature of the offense is not the most important factor in deciding whether to grant parole, see *id*., we initially note our agreement with the explanation in *McBrayer I* concerning the unique nature of the horrific crimes committed by McBrayer. As detailed below, the nature of those offenses, together with McBrayer's denial that he committed anal rape (but not the other aspects of the offenses), together with his admitted continued attraction to 12-14 year old girls, renders the Parole Board's conclusion that McBrayer "will not become a menace to society or to the public safety," if released on parole, MCL 791.233(1)(a), an abuse of discretion.

This Court in *McBrayer I* summarized the crimes as follows:

---

[3] A statutory amendment effective on December 12, 2018, requires any departure from the parole guidelines to be based on "substantial and compelling *objective* reasons stated in writing." MCL 791.233e(6) (emphasis added), as amended by 2018 PA 339. That amendment also identified and limited the circumstances in which substantial and compelling objective reasons for a departure could be found to exist with respect to a prisoner with a high probability of parole. See MCL 791.233e(7), as added by 2018 PA 339. But those amendments do not apply here given that McBrayer's offenses were committed before December 12, 2018, i.e., the effective date of 2018 PA 339. In particular, MCL 791.233e(13), as added by 2018 PA 339, provides:

> Subsections (6), (7), and (8) as amended or added by the amendatory act that added this subsection apply only to prisoners whose controlling offense was committed on or after the effective date of the amendatory act that added this subsection. Subsections (7) and (8) do not apply to a prisoner serving a life sentence, regardless of the date of his or her controlling offense.

[McBrayer]'s convictions arose from the sexual abuse of his stepdaughter. The abuse was alleged to have started in 1990 and continued until September 1993; the victim was between 12 and 14 years old at the time. [McBrayer], a former law-enforcement officer and karate instructor, was between 34 and 36 years old. According to the victim, when she turned 12 [McBrayer] started sexually penetrating her vaginally, anally, and orally. She stated that [McBrayer] raped her on a daily basis and that some of these assaults were aggressive and violent anal rapes. The victim suffered long-term physical injuries and medical problems due to the assaults, along with emotional and mental trauma. The physical injuries included blocked bowels and bleeding of the rectum. [*McBrayer I*, unpub op at 1-2.]

Further, this Court noted in *McBrayer I*:

We first make note of the powerful evidence provided by the victim during her interview on May 6, 2015. The victim recounted how McBrayer, a former court officer in a state district court, kept her in constant fear, and she stated that she still suffers horribly, including by having panic attacks. She stated that, to this day, she cannot have a natural bowel movement and instead needs physical assistance. She stated that she is very scared that McBrayer will "come after her daughter" out of anger from the victim's having reported him. The victim recounted an instance when she was in the eighth grade and McBrayer sodomoized [sic] her so severely that she needed hospitalization; McBrayer came to the hospital with the victim's mother and pretended to offer concern and support. We further note that the victim contracted a sexually transmitted disease from McBrayer. [*Id*. at 4.]

It is undisputed that the victim continues to suffer both mentally and physically from the heinous sexual assaults that McBrayer repeatedly perpetrated on her when she was a child.

This Court in *McBrayer I* also took note of McBrayer's continued minimizing of the level of the abuse. *Id*. McBrayer's minimizing continued in 2018. According to the May 1, 2018 Qualified Mental Health Professional Evaluation (QMHPE), which was based on an interview of McBrayer held on April 26, 2018, McBrayer continued to deny that he had engaged in anal sex with the victim, despite the longstanding and clear evidence of the violent anal rapes. McBrayer's continued minimizing of his crimes calls into serious question the conclusion in the April 12, 2018 COMPAS (correctional offender management profiling for alternative sanctions) assessment that McBrayer's "low Cognitive Behavioral/Psychological score indicates a low likelihood of cognitions such as blaming others, making excuses, or minimizing the seriousness of their offense. A cognitive therapy program does not appear to be needed." His minimizing also calls into question the conclusion in the 2018 COMPAS assessment that there was "[n]o [p]otential [f]aking [c]oncern." And his minimizing contradicts the Board's conclusion, in its June 18, 2018 notice of parole decision, that McBrayer had accepted responsibility for his crime and had accepted his criminal history.

This Court further noted in *McBrayer I* that McBrayer had recently admitted "that he had fantasized about the victim and that he was attracted to 13- and 14-year-olds." *McBrayer I*,

-4-

unpub op at 4. There has been no improvement in this area either. The May 1, 2018 QMHPE stated that "McBrayer admitted to having a sexual attraction to young females, age 12-14, which has persisted since his incarceration in the MDOC." It was then noted that "McBrayer admitted to continued sexual fantasies and masturbation involving this age group, to include the victim, throughout his incarceration." The May 1, 2018 QMHPE also indicated that McBrayer's continued sexual fantasies and masturbation regarding the victim and underage girls was inconsistent with his claim that the sex offender programming that he underwent in 2010 had changed his sexual behavior and thinking. The May 1, 2018 QMHPE concluded that "McBrayer evidenced a clinically significant area of concern in the following need area: Deviant Sexual Preferences."[4]

Nor has there been any improvement since *McBrayer I* in the development of a relapse prevention plan that will materialize. This Court in *McBrayer I* emphasized that McBrayer's plan to move to Louisiana had collapsed and that he was instead placed at a facility in Clinton Township relatively near to the victim's home. *McBrayer I*, unpub op at 5.

> In effect, this derailed McBrayer's plans to live away from the victim and in an area "appropriately removed from high potential for underage traffic." The Board did not adequately consider this factor and it clearly provides a substantial and compelling reason to deny parole. We acknowledge that we are not to substitute our judgment for that of the Board, but here, we are not simply "substituting our judgment." Instead, we are taking into consideration the derailment of McBrayer's plan to stay away from the victim and avoid relapse. . . . The various [parole guidelines] scores did not take into account the nuances of McBrayer's severe abuse of the victim coupled with the failure of his professed plan to prevent relapse and "stay away from his victim." [*Id.*]

Nothing has materially changed on this point since *McBrayer I*. According to the May 1, 2018 QMHPE, McBrayer stated that he did not want to live in Macomb County "due to proximity of his victim." Yet the Board again plans to place McBrayer in Macomb County; in particular, he will be placed initially in housing in Clinton Township that is relatively near the victim's apparent residence.[5] Although the Board states that physical location is not the only part of a relapse prevention plan, this does not mean that physical location is irrelevant, particularly in this

---

[4] The May 1, 2018 QMHPE also noted:

> The following need areas have been identified as being of some concern for Mr. McBrayer: Significant Social Influences, Capacity for Relationship Stability, Hostility Towards Women, General Social Rejection, Negative Emotionality, Sex Drive Sex Preoccupation and Sex as Coping.

[5] Indeed, the victim alleges that in 2016, during the period when McBrayer was released, she saw him at a traffic light less than one mile from her home.

case given that both the victim and McBrayer himself do not want him to be placed in Macomb County.[6]

Overall, the relevant facts and circumstances pertaining to the parole decision are, for all practical purposes, unchanged from the facts and circumstances considered in *McBrayer I*. This Court in *McBrayer I* concluded that the Board's 2015 decision to parole McBrayer was an abuse of discretion. The Board's 2018 decision to parole McBrayer was therefore likewise an abuse of discretion given the unaltered facts and circumstances as discussed above. The Board's determination that McBrayer will not pose a menace to society or the public safety falls outside the range of reasonable and principled outcomes given the facts and circumstances relevant to the 2018 parole decision, including McBrayer's continued minimizing of his heinous actions, the determination in the May 1, 2018 QMHPE that he has clinically significant deviant sexual interests, and the absence of a relapse prevention plan that will avoid placing McBrayer relatively near the victim's residence.

In its brief on appeal, the Board makes arguments challenging discrete aspects of the circuit court's reasoning, but those arguments do not alter the conclusion that the Board abused its discretion. The Board argues that the circuit court erred in viewing the Board's April 2018 parole rescission decisions as being the same as an initial decision to grant or deny parole. But the Board's own April 10, 2018 notice of its decision stated that the Board lacked reasonable assurance that McBrayer "would not become a menace to society or to the public safety and denial of parole is warranted." In any event, it is not clear what difference any characterization of the Board's decisions in April 2018 makes to the question of whether the Board's June 2018 decision to parole McBrayer was an abuse of discretion. The Board fails to adequately explain the relevance of its argument on this point.

The Board next argues that the circuit court erred in stating that the 2018 COMPAS assessment had no violence risk assessment. The Board notes that McBrayer was identified as having a low risk under the category, "MDOC [Michigan Department of Corrections] VFO [Violent Felony Offense] Risk (Conviction)," which the Board says "represents the likelihood that a person will be arrested within three years for a violent felony." But the 2018 COMPAS assessment provided a separate risk assessment category for "Violence," which was marked "N/A," presumably meaning "not applicable." The Board's brief on appeal fails to explain why this separate risk category for violence was included in the COMPAS but was for some reason not assessed. The Board's failure to fully address this point renders its appellate argument abandoned. "An appellant may not merely announce his position and leave it to this Court to

---

[6] The Board states in its brief that McBrayer did not violate parole during the period that he was on parole from January 2016 to April 2018, a consideration which was not identified by the Board as a reason for its decision when it granted parole in 2018. It is important to note that, for most of the period that McBrayer was on parole during the identified timeframe, McBrayer's parole was under continual appellate review by the circuit court, this Court, or our Supreme Court. Such ongoing appellate scrutiny will not exist if McBrayer, whose parole release was stayed pending this appeal, is released after appellate review of the 2018 Board decision.

discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority. . . . An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (citations omitted). Even if the circuit court was incorrect in stating that there was no assessment of violence in the 2018 COMPAS assessment, this does not alter the conclusion that the Board abused its discretion for all of the reasons discussed earlier. This Court will affirm a lower court decision that reached the correct result even if this Court uses different reasoning than the lower court. *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998).

The Board next contends that the circuit court failed to view the 2018 QMHPE in context. For example, according to the Board, the circuit court emphasized the QMHPE assessment regarding McBrayer's deviant sexual interest while paying little attention to other assessment areas. The Board also contends that the circuit court failed to address the QMHPE assessment that there was no concern regarding poor cognitive problem solving. It is true that the circuit court did not quote or address every individual aspect of the QMHPE, but the Board cites no authority establishing that the circuit court was required to do so. The Board's argument on this point is thus deemed abandoned as insufficiently briefed. *Peterson Novelties*, 259 Mich App at 14. In another context, this Court has noted that a lower court need not comment on every piece of evidence entered and every argument raised by the parties. See *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005) (stating, in a child custody case, that a court's "findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties"). Overall, it is clear from the circuit court's opinion and order that the circuit court properly reviewed the Board's decision in accordance with the applicable standard of review. The circuit court's emphasis of certain parts of the QMHPE does not alter the conclusion that, for all of the reasons discussed at length earlier, the circuit court reached the correct result in determining that the Board clearly abused its discretion in paroling McBrayer.

Finally, given that the circuit court correctly concluded that the Board clearly abused its discretion in deciding to parole McBrayer, it is unnecessary to address the alternative ground for affirmance asserted by the prosecutor, i.e., that the Board violated Const 1963, art 1, § 24, by failing to treat the victim with respect for her dignity and privacy.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford