*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GEOFFREY N. FIEGER and FIEGER LAW, PC,

Plaintiffs-Appellants/Cross-Appellees,

v

RICHARD K. GOODMAN, KATHLEEN J. KALAHAR, GOODMAN KALAHAR, MARTIN KNUDSEN, TINA TOKAR, and ZACHARY ALLEN KOTT-MILLARD,

Defendants-Appellees/Cross-Appellants,

and

DEAN A. ROBB, SR., and DEAN ROBB LAW FIRM,

Defendants-Appellees,

and

ESTATE OF MICHAEL KNUDSEN, by MICHAEL J. LONG, Personal Representative,

Defendant.

UNPUBLISHED
January 14, 2020

No. 344151
Grand Traverse Circuit Court
LC No. 2017-032217-CZ

Before: CAMERON, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs, Geoffrey N. Fieger and Fieger Law, PC ("the Fieger firm") (collectively, "the Fieger parties"), filed suit against defendants, alleging various claims regarding a purported conspiracy to construct a legal-malpractice claim against the Fieger parties. They now appeal as

-1-

of right the trial court's order dismissing the case as a sanction for violations of a scheduling-conference order. Defendants Richard K. Goodman, Kathleen J. Kalahar, Goodman Kalahar, Martin Knudsen ("Martin"), Tina Tokar, and Zachary Allen Kott-Millard (collectively, "cross-appellants") cross-appeal the same order. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

The Fieger parties' claims arose from two legal-malpractice cases against them ("the malpractice cases"). The underlying tort cases from which the malpractice cases were spawned involved the electrocution and drowning death of Michael Knudsen ("Michael") and the serious personal injury of Kott-Millard ("the electrocution cases"). Those prior cases have resulted in lengthy unpublished opinions issued by this Court. See *Kott-Millard v Traverse City*, unpublished per curiam opinion of the Court of Appeals, issued June 5, 2014 (Docket Nos. 314971; 314975; 315043; 315044) (addressing the electrocution cases); *Knudsen Estate v Fieger*, unpublished per curiam opinion of the Court of Appeals, issued March 5, 2019 (Docket Nos. 341412; 341414) (addressing the malpractice cases).

In 2011, Michael jumped off a dock into the water at Clinch Marina, located in Grand Traverse Bay. Michael drowned because of electricity leaking into the water from the dock, and Kott-Millard was injured while trying to rescue him. Michael's estate and Kott-Millard retained defendants Dean A. Robb, Sr., and Dean Robb Law Firm (collectively, "the Robb parties") to represent them for tort claims regarding this matter, and retained the Fieger parties as co-counsel. The Robb parties and the Fieger parties filed actions in Grand Traverse Circuit Court on behalf of Michael's estate and Kott-Millard against various municipal and related defendants. After discovery, the circuit court granted summary disposition based on governmental immunity to all of the defendants except for dockmaster Barry Smith, finding that a question of fact existed regarding whether he was grossly negligent. This Court reversed the trial court's denial of summary disposition to Smith, and affirmed the trial court's grant of summary disposition to the other defendants.

After this Court remanded the electrocution cases to the trial court for further proceedings, Michael's estate and Kott-Millard retained Goodman Kalahar and discharged the Fieger parties, but not the Robb parties. *Knudsen Estate*, unpub op at 4. The trial court dismissed the remaining claims in the electrocution cases, for reasons not directly relevant to this appeal. *Id*.

In 2016, Michael's estate and Kott-Millard, through Goodman Kalahar, filed legal-malpractice actions against the Fieger parties in Grand Traverse Circuit Court. *Id*. The gist of the malpractice claims was that the Fieger parties had "breached the standard of care by failing to plead tort claims against the municipal entities under federal admiralty law." *Id*. The trial court granted summary disposition to the Fieger parties based on the so-called "attorney-judgment rule." *Id*. at 5-6. On appeal, this Court reversed the grant of summary disposition to the Fieger parties and remanded the malpractice cases to the trial court for further proceedings. *Id*. at 23.

In response to the malpractice actions, the Fieger parties filed the present action against the various defendants in Wayne Circuit Court. The Fieger parties alleged that, beginning

-2-

around the middle of 2014, Goodman Kalahar, along with the attorneys who owned the firm (collectively, "the Goodman Kalahar parties"), had conspired with the Robb parties to develop a malpractice theory that the Fieger parties should have pursued federal claims sounding in admiralty law. That is, according to the Fieger parties, the Goodman Kalahar parties and the Robb parties declined to take any action to assert federal claims sounding in admiralty law in the electrocution cases and instead waited to pursue legal-malpractice claims against the Fieger parties. The Fieger parties alleged that this conspiracy was tacitly approved by Kott-Millard, Michael's estate, and Michael's parents, Martin and Tokar (collectively, "the Client parties"). The Fieger parties alleged that, in his deposition in the malpractice cases, Robb acknowledged that he had secretly given file materials in the electrocution cases to the Goodman Kalahar parties in June 2014, shortly after this Court issued its opinion in the electrocution cases.

In their complaint, the Fieger parties alleged five counts. In Count 1, the Fieger parties asserted a breach-of-contract claim against the Robb parties. The Fieger parties alleged that they had entered into a contractual relationship with the Robb parties to represent the interests of Michael's estate and Kott-Millard. The Fieger parties alleged that the Robb parties breached this agreement by failing to cooperate and work with the Fieger parties, failing to exercise due diligence and good faith, and working with other persons to undermine and harm the contractual relationship. In Count 2, the Fieger parties asserted a breach-of-contract claim against the Client parties. The Fieger parties alleged that the Client parties failed to cooperate and work with the Fieger parties in their representation of the Client parties, and that the Client parties purportedly worked with other persons to undermine and harm the contractual relationship with the Fieger parties. In Count 3, the Fieger parties alleged a claim against the Robb parties and the Goodman Kalahar parties for tortious interference with a contractual relationship. The Fieger parties alleged that the Robb parties and the Goodman Kalahar parties improperly instigated a breach of the contract between the Fieger parties and the Client parties. In Count 4, the Fieger parties alleged a civil-conspiracy claim against all defendants in this case. In Count 5, the Fieger parties asserted a breach-of-fiduciary duty claim against the Robb parties. The Fieger parties alleged that they had reposed faith, confidence, and trust in the Robb parties and that the Robb parties breached their fiduciary duty to the Fieger parties.

The Wayne Circuit Court transferred the Fieger parties' lawsuit to the Grand Traverse Circuit Court. After the transfer, the trial court issued an amended scheduling order. The order stated that a final pretrial-scheduling conference would be held in May 2018 in the trial court's chambers in Traverse City, with the exact date of the conference to be provided by the trial court's administrative division in a separate notice. The order required all parties and their attorneys to attend this conference. The order further required that, before the settlement conference, the parties had to file trial briefs, trial exhibits, proposed jury instructions, and a proposed verdict form. The order stated that failure to comply with every one of its requirements "may result in a default or a dismissal as may be appropriate against the offending party or attorney and an award of sanctions to each non-offending party." The trial court subsequently issued an amended notice of settlement conference indicating that the settlement conference would be held on May 15, 2018, at 9:00 a.m., in the courthouse in Traverse City.

In January 2018, the Robb parties filed a motion for summary disposition under MCR 2.116(C)(6), (7), (8), and (10), arguing that the doctrine of res judicata barred the Fieger parties' claims and that, even if the doctrine of res judicata did not apply, the Fieger parties had failed to

state or support their claims against the Robb parties. On March 2, 2018, the trial court granted summary disposition to the Robb parties on both grounds. The trial court also granted summary disposition to Michael's estate.

On May 14, 2018, late in the afternoon on the day before the final pretrial-scheduling conference, the parties filed a stipulation, along with a proposed order, that would have dismissed all claims against the remaining defendants. The proposed order stated that the reasons for dismissal were those stated by the trial court for dismissing the claims against the Robb parties and the estate. The stipulation and proposed order purported to preserve the Fieger parties' appellate rights to challenge the trial court's decision and reasons for dismissal.

On May 17, 2018, the trial court entered a final order of dismissal. The trial court noted that the case was scheduled for a final scheduling conference on May 15, 2018, at the Traverse City courthouse. The trial court noted that "[j]ust before 5:00 on Monday, May 14, the parties contacted the Court office and advised they had entered into a Stipulation of Dismissal." The trial court also noted that none of the parties or attorneys appeared at the Traverse City courthouse on May 15 for the settlement conference. In addition, the parties did not file trial briefs, proposed jury instructions, or exhibits as required by the scheduling order.

The trial court did not execute the proposed order of dismissal submitted by the parties, but instead entered an order dismissing the parties' remaining claims and any counterclaims, cross-claims, and third-party claims. The trial court did so as a sanction, based on its conclusion that the parties had violated provisions of its scheduling order. The order of dismissal stated:

> Had the remaining defendants filed a Motion for Summary Disposition, accompanied by a brief, and [the Fieger parties] filed a response, this court may have ordered summary disposition for the defendants in this case. But that did not happen.

> The Scheduling Order required the parties to arrange and complete mediation by April 30, 2018. Mediation was not accomplished.

> The parties and trial attorneys in this case failed to appear at the Settlement Conference. Indeed no one appeared at the Settlement Conference. The documents required by the scheduling order to be filed by [the] Settlement Conference, including the trial brief, proposed jury instructions and trial exhibits, were not filed. For violation of the Civil Scheduling Conference order entered in this case on August 30, 2017, the remaining claims by [the Fieger parties] against defendants and any and all counter-claims, cross-claims, and third-party claims by either [the Fieger parties] or defendants are hereby dismissed with prejudice and without costs.

This appeal and cross-appeal followed.

## II. ANALYSIS

### A. SUMMARY DISPOSITION

-4-

The Fieger parties first argue that the trial court erroneously granted summary disposition to the Robb parties on the ground that the Fieger parties had failed to state, or provide evidentiary support for, their claims for breach of contract, tortious interference with a contractual relationship, and civil conspiracy. We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

Initially, we note that the Fieger parties make no appellate argument challenging the grant of summary disposition to the Robb parties on the breach-of-fiduciary duty claim. The Fieger parties have thus abandoned any challenge to the trial court's grant of summary disposition to the Robb parties on that claim. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 668 n 4; 854 NW2d 489 (2014).

Regarding the breach-of-contract claim against the Robb parties, the Fieger parties asserted in their complaint that the contracts allegedly breached were the August 2011 retainer agreements. In those agreements, the Fieger parties and the Robb parties agreed to provide legal services to the Client parties with respect to the electrocution cases. At the summary-disposition hearing, the trial court noted that it had found nothing in those agreements that imposed any duties on the Robb parties in favor of the Fieger parties. On appeal, the Fieger parties fail to identify any provision of the agreements that they believe imposed a duty on the Robb parties in favor of the Fieger parties and that the Robb parties breached. The Fieger parties cannot rely on this Court to make their arguments for them because an appellant "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." See *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003) (citations omitted).

Rather than identify a specific contractual provision that they believe was breached, the Fieger parties assert that the Robb parties breached the implied contractual obligation to act in good faith. Michigan does not, however, "recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 501; 892 NW2d 467 (2016) (cleaned up). Furthermore, the implied covenant of good faith cannot be invoked to override or replace any express contractual language. *Id*. Because the Fieger parties fail to identify any express contractual provision that applies, their invocation of the implied covenant of good faith does not establish that the trial court erroneously granted summary disposition to the Robb parties on the breach of contract claim.

Regarding the claim for tortious interference with a contractual relationship, the Fieger parties again rely on the August 2011 retainer agreements and argue that the Robb parties instigated the Client parties' alleged breaches of those retainer agreements. "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89-90; 706 NW2d 843 (2005).

The Fieger parties have failed to make factual allegations or present evidence that the Client parties breached the retainer agreements. The fact that the Client parties discharged the Fieger parties does not establish a breach of contract. A client "has an absolute right to discharge

an attorney and is therefore not liable under the contract for exercising that right." *Reynolds v Polen*, 222 Mich App 20, 25; 564 NW2d 467 (1997). The Fieger parties suggest that the Client parties failed to cooperate in the litigation of the electrocution cases, but the Fieger parties have provided no factual allegations or evidence to support that assertion. The fact that the Client parties sought a second opinion from other attorneys does not establish a breach of contract by the Client parties. The Fieger parties assert that the Client parties breached the implied duty to act in good faith, but again, there is no cause of action for breach of the implied covenant of good faith, and the duty to act in good faith cannot be invoked as a replacement for an express contractual provision to establish a breach of a contract. *Bank of America*, 316 Mich App at 501. Because the Client parties did not breach the retainer agreements, the Fieger parties have failed to establish a necessary element of their claim against the Robb parties for tortious interference, and the trial court therefore properly granted summary disposition to the Robb parties with respect to the tortious-interference claim.

As for the civil conspiracy claim, the Fieger parties' position on appeal fails for multiple reasons. They cite no authority regarding what is required to establish a civil-conspiracy claim and fail to present a coherent argument regarding this claim. They have therefore abandoned any argument regarding this claim. See *Peterson Novelties*, 259 Mich App at 14. Moreover, they have failed to allege facts or present evidence establishing an actionable underlying tort. Because no basis exists to find an unlawful purpose or unlawful means in the Robb parties' actions, the trial court did not err in its grant of summary disposition regarding this claim. *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005) (cleaned up).

For these reasons, the trial court properly granted summary disposition to the Robb parties. It is therefore unnecessary for this Court to address whether summary disposition in favor of the Robb parties was warranted on the alternative basis of the doctrine of res judicata.

## B. DISMISSAL AS A SANCTION

The Fieger parties and cross-appellants also challenge the trial court's order of dismissal as a sanction for their failure to comply with its scheduling order. "Trial courts possess the inherent authority to sanction litigants and their counsel, including the right to dismiss an action." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). We review a trial court's decision to dismiss a case as a sanction for an abuse of discretion, noting that dismissal "is a drastic step that should be taken cautiously." *Vicencio v Jaime Ramirez, MD, PC*, 211 Mich App 501, 506; 536 NW2d 280 (1995).

This Court has provided a nonexhaustive list of factors that a court should consider before ordering dismissal as a sanction:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Id*. at 507.]

Before imposing the sanction of dismissal, "the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper." *Id*. at 506. If the trial court has failed to evaluate other available options on the record, then the dismissal of the case constitutes an abuse of discretion. *Id*. at 506-507.

Here, there is no indication in the record that the trial court considered a sanction short of dismissal with prejudice. We therefore conclude that the trial court abused its discretion in dismissing the case in the manner that it did, i.e., as a sanction for violating its scheduling order. See *id*. On remand, the trial court shall enter the parties' stipulated dismissal.

Affirmed in part, reversed in part, and remanded for entry of dismissal. Because no party has prevailed in full, we decline to award taxable costs under MCR 7.219(F). We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle