*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ADORA WILMORE-MOODY, Individually and as
Next Friend of DAIMLER AAKU,

Plaintiff/Counterdefendant-Appellant,

v

MOHAMMED ZAKIR,

Defendant-Appellee,

and

EVEREST NATIONAL INSURANCE CO.,

Defendant/Counterplaintiff-Appellee,

and

PDB INVESTMENTS & INSURANCE CO.,
MICHIGAN ASSIGNED CLAIMS PLAN, and
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

Defendants.

UNPUBLISHED
May 6, 2021

No. 352411
Wayne Circuit Court
LC No. 18-002518-NI

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

Plaintiff Adora Wilmore-Moody, individually and as next friend of Daimler Aaku, appeals as of right the trial court's order dismissing the action. For the reasons set forth in this opinion, we affirm in part and reverse in part.

I. BACKGROUND

-1-

This case arises from an automobile accident that occurred on April 6, 2017. According to Wilmore-Moody, she and her 12-year-old son, Daimler Aaku,[1] were parked in Wilmore-Moody's vehicle as she was dropping Aaku off at school when Wilmore-Moody's vehicle was struck from behind by another vehicle. Wilmore-Moody alleged that the other vehicle involved in the accident was driven by defendant Mohammed Zakir.

At the time, Wilmore-Moody had a policy of insurance that had been issued by Everest National Insurance Company. Wilmore-Moody had obtained the policy through her application on August 26, 2016, and she had renewed the policy on February 26, 2017. The application included the question, "Have you identified on this application all members of your household who are the age of 14 or older?" The box indicating "Yes" was checked in response to this question. The application also contained language stating that

ALL HOUSEHOLD MEMBERS AGE 14 OR OLDER, INCLUDING BUT NOT LIMITED TO SPOUSE(S), ROOMMATE(S), CHILDREN, FAMILY MEMBERS AND WARDS MUST BE LISTED AS POTENTIAL DRIVERS. IN ADDITION, ALL INDIVIDUALS OUTSIDE THE HOUSEHOLD AND ANY DRIVERS TO WHOM THE INSURED AUTO(S) IS FURNISHED OR AVAILABLE FOR HIS OR HER USE, EVEN OCCASSIONALLY [sic] AND/OR INFREQUENTLY, MUST BE IDENTIFIED AND LISTED BELOW. YOUR TOTAL POLICY PREMIUM CAN BE AFFECTED BY THIS INFORMATION.

Wilmore-Moody[2] was the only driver listed under this provision. No other drivers were listed on the application. Finally, the application also contained the following provisions above the signature line in a section with the heading "APPLICANT'S STATEMENT – READ BEFORE SIGNING":

I hereby apply to the Company for a policy of insurance, as set forth in this application, on the basis of the statements contained herein. I agree that if I intentionally conceal or misrepresent a material fact or circumstance relating to the insurance, the policy shall be null and void. . . . I certify that all household members age 14 or older, including but not limited to spouse(s), roommate(s), children, family members and wards have been listed as potential drivers. . . . I understand that my total policy premium could be affected by this information.

In a letter dated June 12, 2017, American Claims Management, Inc. indicated that it was the third-party administrator for Everest regarding Wilmore-Moody's claim under the policy stemming from the April 6 accident and that ACM was conducting an investigation of the claim.

Wilmore-Moody testified in her examination under oath that from some time in 2014 until approximately December 2016, she lived in the same residence with her daughter Yamashita

---

[1] Aaku was 13 years old at the time of Wilmore-Moody's examination under oath.

[2] On the application, she is listed as Adora Wilmore.

Franklin and Yamashita's four children, Alexandra, Jean-Luc, Jean-Paul, and Jean-Marc. Alexandra was 18 years old in August 2016 when Wilmore-Moody applied for her insurance policy with Everest. At that time, Wilmore-Moody also lived with her "son"; presumably, she was referring to Aaku. Wilmore-Moody indicated that after December 2016, when she moved to a new address, she only lived with her husband and Aaku. Aaku was 13 years old at the time of the examination under oath and 12 years old at the time of the accident.

In a letter dated January 10, 2018, Wilmore-Moody's Everest insurance policy was rescinded, and all claims under the policy were denied. The letter stated in relevant part as follows:

Dear Ms. Wilmore:

ACM [American Claims Management] is the authorized third-party administrator for Everest National Insurance Company. We are in receipt of the first-party no-fault insurance claim for you arising from an accident on the above-referenced date of loss. Please accept this correspondence as notice that the applicable policy of insurance is hereby rescinded such that any claim made under it is denied in its entirety. Rescission is a legal doctrine that nullifies an insurance policy as if it never existed.

Our investigation revealed as follows:

ACM received this claim from you indicating that you and Daimler Aaku were injured in an accident on April 6, 2017. The issue is that you did not list Yamshita Franklin, Alexandra Franklin, Jean-Luke Franklin, and Jean-Paul Franklin as household residents on the policy application. When the company spoke with you, you confirmed that you lived with Yamshita Franklin, Alexandra Franklin, Jean-Luke Franklin, and Jean-Paul Franklin when you purchased the policy and signed the application. Listing all household residents, over the age of fourteen, is a condition precedent to binding coverage. Even if it was not a condition precedent, adding Alexandra Franklin to the policy would have increased the premium by $1,523.00.

This constituted a material misrepresentation that entitles Everest to rescind the subject policy of insurance as if it never existed. This means that nobody is entitled to first-party no-fault insurance coverage under the abovereferenced policy pursuant to the Michigan Supreme Court's holding in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012) see *also Bazzi v Sentinel Ins. Co et al*. ___ Mich ___App (2016).

Please feel free to contact me in the event that you have any questions regarding Everest's decision.

I have enclosed $7,413.57, which is a refund of the policy premium.

Thank you for your attention.

Rebecca Soltis

In a letter dated January 19, 2018, Wilmore-Moody's counsel informed Everest that the policy premium refund check was being returned and that a lawsuit would be filed.

Wilmore-Moody initiated this action on March 6, 2018. In her complaint, she asserted a count of negligence against Zakir, alleging that he negligently caused the motor vehicle accident. Wilmore-Moody also asserted a claim against Everest for first-party no-fault benefits under the insurance policy.[3] Additionally, Wilmore-Moody asserted a claim for first-party personal protection insurance benefits against defendants Michigan Assigned Claims Plan (MACP) and Michigan Automobile Insurance Placement Facility (MAIPF) on behalf of Aaku because Everest was claiming that Aaku was not covered by any existing no-fault insurance policy.

In answer, as pertinent to the issues presented on appeal, Everest alleged in its affirmative defenses that Wilmore-Moody misrepresented material facts at the time that she obtained the insurance policy by failing to list all of her household members over the age of 14, particularly Alexandra Franklin whose inclusion would have caused the policy premium to be $1,532 more than what was actually charged. Everest maintained that as a result, it was entitled to rescind the policy such that it was void *ab initio* and Wilmore-Moody was therefore without insurance coverage for her vehicle involved in the accident. Everest also asserted a counterclaim for declaratory relief with respect to Everest's claim that it was entitled to rescind the insurance policy based on Wilmore-Moody's alleged material misrepresentation.

Everest subsequently moved for summary disposition under MCR 2.116(C)(10) with respect to Wilmore-Moody's claim for first-party benefits. Everest maintained its argument that it was entitled to rescind the policy because Wilmore-Moody had made a material misrepresentation in her insurance application by failing to list all of her household members over the age of 14, particularly Alexandra Franklin who would have caused an increase in premium of more than $1,500. Everest argued there was no coverage under the policy and that it was entitled to summary disposition.

The trial court granted Everest's motion for summary disposition and dismissed the first-party claim against Everest on the ground that there was fraud in the original application warranting rescission of the policy.

Following this ruling, Zakir moved for summary disposition under MCR 2.116(C)(10) with respect to the individual claims against him, arguing that Wilmore-Moody's lack of insurance at the time of the accident precluded her third-party claims against him pursuant to MCL 500.3135(2)(c). The trial court also granted this motion. The trial court dismissed all of Wilmore-Moody's individual claims against Zakir and indicated that Wilmore-Moody remained in the case with respect to Zakir solely in her capacity as next friend of Aaku.

After Aaku's claims were resolved by settlement agreements, the cause of action was dismissed with prejudice by stipulation of the parties. This appeal followed.

---

[3] Wilmore-Moody raised additional claims that were eventually dismissed and that are not at issue in this appeal.

## II. STANDARD OF REVIEW

This Court reviews a trial court's resolution of a summary disposition motion de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In this case, the summary disposition rulings now challenged by Wilmore-Moody were made pursuant to MCR 2.116(C)(10). On a motion under MCR 2.116(C)(10), "a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion," and the motion may only be granted if "there is no genuine issue of material fact." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

"The interpretation of a contract, such as an insurance policy, is also reviewed de novo." *Webb v Progressive Marathon Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 351048); slip op at 3.

## III. ANALYSIS

On appeal, Wilmore-Moody first challenges the trial court's ruling that Everest was justified in rescinding the insurance policy such that it was entitled to summary disposition in its favor.

"[I]t is well settled in Michigan that fraud in the application for an insurance policy may allow the blameless contracting party to avoid its contractual obligations through the application of traditional legal and equitable remedies." *Titan Ins Co v Hyten*, 491 Mich 547, 570; 817 NW2d 562 (2012). Our Supreme Court has explained that fraud in the inducement to enter a contract generally "renders the contract *voidable* at the option of the defrauded party" and "[f]or that reason, an insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408; 919 NW2d 20 (2018) (quotation marks and citations omitted); see also *Titan*, 491 Mich at 572-573 ("[A]n insurer may seek to avoid liability under an insurance policy using traditional legal and equitable remedies including cancellation, rescission, or reformation, on the ground of fraud made in an application for insurance, notwithstanding that the fraud may have been easily ascertainable and the claimant is a third party.") "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi*, 502 Mich at 409.

Wilmore-Moody first argues that the trial court's ruling was erroneous because the language of the contract expressly limits the availability of rescission to situations where there was an intentional misrepresentation. Wilmore-Moody relies on a provision in the insurance application above her signature providing that "I agree that if I intentionally conceal or misrepresent a material fact or circumstance relating to the insurance, the policy shall be null and void."

As an initial matter, Wilmore-Moody did not raise this argument in the trial court below and it is therefore unpreserved. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). Accordingly, Wilmore-Moody has waived appellate review of this argument. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (stating that the failure to timely raise an

issue in the trial court generally "waives review of that issue on appeal").[4]  "Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention."  *Id*. at 388.  "By limiting appellate review to those issues raised and argued in the trial court, and holding all other issues waived, appellate courts require litigants to raise and frame their arguments at a time when their opponents may respond to them factually."  *Id*.

Moreover, even considering this argument on the merits, Wilmore-Moody did not present any evidence that the omission or misrepresentation was not intentional and there is no genuine issue of material fact on this record that the misrepresentation was intentional.  "[T]he general rule is that to constitute actionable fraud it must appear: (1) That [the insured] made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by [the insurer]; (5) that [the insurer] acted in reliance upon it; and (6) that he thereby suffered injury."  *Titan*, 491 Mich at 555 (quotation marks and citation omitted).

In this case, the record evidence shows that Wilmore-Moody sought an insurance policy from Everest and signed an application for insurance in which Wilmore-Moody was the only listed driver and no other household members were listed.  Yet, Wilmore-Moody testified in her examination under oath that multiple other family members resided with her at the time that she obtained this insurance policy, including Alexandra who was over the age of 14.  In the insurance application, Wilmore-Moody affirmatively represented—by signing the application beneath the applicant statement—that she was applying for the insurance policy on the basis of her statements in the application, that she had identified all household members over the age of 14, that she understood that this information could affect her policy premium, and that she agreed that her policy would be void if she intentionally concealed or misrepresented a material fact.  There was unrebutted evidence that including Alexandra as a household member over the age of 14 would have resulted in a premium increase of more than $1,500.  From this undisputed evidence, reasonable minds could not differ in concluding that Wilmore-Moody intentionally misrepresented that there were no members of her household over the age of 14.  *El-Khalil*, 504 Mich at 160; *Titan*, 491 Mich at 555; *Webb*, ___ Mich App at ___; slip op at 4 (holding that the insured "made the misrepresentation with the intent that she would obtain insurance, as evidenced by [the insured's] signature on the insurance application that contained the misrepresentation").  Hence, Wilmore-Moody has not shown any error in the trial court's ruling on this basis.

Wilmore-Moody next argues that the contractual language requires an adjustment of premiums in this situation rather than rescission.  In support, she relies on language in the applicant

---

[4] Our Supreme Court further stated in *Walters* that although an appellate court may review an unpreserved issue to prevent a miscarriage of justice, "[s]uch inherent power is to be exercised only under what appear to be compelling circumstances to avoid a miscarriage of justice or to accord a [criminal] defendant a fair trial."  *Walters*, 481 Mich at 387 & n 21 (quotation marks and citations omitted; second alteration in original).  Wilmore-Moody has not demonstrated that such circumstances exist in this case given, as further explained in this opinion, that the merits of her arguments do not demonstrate that she is entitled to any relief.

statement above her signature on the application stating, "I agree that the Insurance Company may correct my premium if rated incorrectly or if information obtained from additional sources, including Motor Vehicle Reports, changes factors which affect the premium." She additionally quotes the following language from the applicant statement: "I certify that all household members age 14 or older, including but not limited to spouse(s), roommate(s), children, family members and wards have been listed as potential drivers . . . I understand that my total policy premium could be affected by this information." (Ellipsis in original.)

Wilmore-Moody specifically argues on appeal:

> Here, the contract requires that if the premium rate is improper, it must be corrected. There is no language to suggest that an improper premium rate voids the contract. Similarly, the only statement made in the contract about the impact of household members is on the premium rate. It does not state that failure to list all the relevant household members automatically voids the contract. Had there been language similar to that above about how intentional misrepresentations void the contract which required that failure to list all relevant household members would or even could void the contract, then there may be a case for rescission on the grounds that Plaintiff failed to list all household members.

Wilmore-Moody further contends that equity does not support rescission in this case because "Everest could easily have determined that Plaintiff resided with her granddaughter if they had simply asked her as was demonstrated by her testimony in their investigation" and any misrepresentation in failing to list all household members over the age of 14 was "due to hastiness and sloppiness not malice or deceit."

Wilmore-Moody also failed to preserve this issue by raising it in the trial court. *Mouzon*, 308 Mich App at 419. Accordingly, this argument is waived. *Walters*, 481 Mich at 387-388.

Nonetheless, Wilmore-Moody has not established any error based on the merits of her argument. This Court recently rejected a similar argument in *Pioneer State Mut Ins Co v Frantz*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2021 (Docket No. 348917), pp 6-7:[5]

> We reject defendant's argument that the proper remedy in this case is to allow him to pay plaintiff the difference in the premium had Abbey been included on the policy which amounted to approximately $380. In support of this solution, defendant relies on the following insurance policy provision:
>
> **CHANGES**

---

[5] Unpublished opinions may serve as persuasive guidance but "are not precedentially binding under the rules of stare decisis." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 20 n 16; 672 NW2d 351 (2003).

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

Defendant's reliance on this provision is misplaced. Plainly read, the provision applies to changes made during the policy term. The provision is inapplicable where defendant's failure to disclose occurred during the application for insurance. Further, defendant failed to report Abbey at any time during the policy period so that an increase in the premium could have taken effect.

In this case, Wilmore-Moody never disclosed the presence of Alexandra or her other family members as members of her household so that her premium could be increased. Wilmore-Moody also ignores the fact that the language she relies on for her appellate argument is contained within the same applicant statement section as the language indicating that intentionally concealing or misrepresenting a material fact or circumstance related to the insurance will render the policy void. Accordingly, considering the cited language in context, it does not suggest as Wilmore-Moody claims that Everest is prohibited from seeking rescission of the policy based on the misrepresentation regarding household members age 14 or older. *Id.*

Moreover, Wilmore-Moody's appellate argument that equity does not favor rescission in this case appears foundationally unsound because Wilmore-Moody incorrectly implies that Everest had a duty to investigate and discover the omitted information regarding members of Wilmore-Moody's household so as to adjust the premium. Our Supreme Court has expressly stated that insurers have no such duty. *Titan*, 491 Mich at 570 (holding "that an insurer has no duty to investigate or verify the representations of a potential insured"). "Michigan's common law has consistently defined the elements of fraud without reference to whether the fraud could, upon the exercise of reasonable diligence in carrying out further investigation, have been discovered by the party claiming that it was harmed by the fraud." *Id.*

Regarding the remedy of rescission, our Supreme Court has explained that it is not an absolute matter of right because it is an equitable remedy and that it is thus a remedy to be "granted

only in the sound discretion of the court." *Bazzi*, 502 Mich at 409 (quotation marks and citation omitted). A trial court must balance the equities to determine whether a party seeking rescission is entitled to such relief, and the trial court therefore is "not required to grant rescission in all cases." *Id*. at 410. More specifically,

> For example, "rescission should not be granted in cases where the result thus obtained would be unjust or inequitable," or "where the circumstances of the challenged transaction make rescission infeasible[.]" Moreover, when two equally innocent parties are affected, the court is "required, in the exercise of [its] equitable powers, to determine which blameless party should assume the loss . . . ." "[W]here one of two innocent parties must suffer by the wrongful act . . . of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong." "The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked." [*Id*. at 410-411 (citations omitted; second and third alterations in original; ellipses in original).]

As previously discussed, the undisputed evidence in this case supports the conclusion that Wilmore-Moody signed the application in which she failed to list all of her household members age 14 or older—specifically Alexandra—as required by the application, thereby committing an intentional misrepresentation. To the extent Wilmore-Moody claims that Everest could have discovered this omission by asking her, Everest *did* ask her through its questions on the application. Considering this evidence, along with the lack of any duty by Everest to verify Wilmore-Moody's representations, *Titan*, 491 Mich at 570, Wilmore-Moody has not shown that she was an equally innocent party that should not have assumed the loss, *Bazzi*, 502 Mich at 410-411.

Hence, Wilmore-Moody has not demonstrated that the trial court's summary disposition ruling was erroneous based on her argument that requiring an adjustment in premiums rather than rescission was the proper remedy. *El-Khalil*, 504 Mich at 160.

Next, Wilmore-Moody argues that Everest failed to show that the omission was made with the intent to defraud. Although Wilmore-Moody admits that she failed to list Alexandra as member of her household over the age of 14, Wilmore-Moody contends that there is no evidence that she did so with the intent to defraud Everest. Wilmore-Moody argues, without citing any evidentiary support, that the omission was the result of "mere sloppiness, haste, or poor communication between herself and the agent that filled out the application." Wilmore-Moody also repeats her assertion that Everest could have discovered the truth had it "attempted to double check" regarding the members of Wilmore-Moody's household.

As previously explained, Everest had no such duty and the undisputed evidence would not permit reasonable minds to differ in concluding that the misrepresentation was intentional. Wilmore-Moody presented no evidence regarding her intent, despite the requirement in the context of a motion under MCR 2.116(C)(10) that " 'an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial.' " *Maiden*, 461 Mich at 120, quoting MCR 2.116(G)(4). "A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10)." *Maiden*, 461 Mich at 121.

Wilmore-Moody's argument that intent to defraud was not established therefore does not demonstrate that the trial court's ruling was erroneous. *El-Khalil*, 504 Mich at 160.

This is true, even accepting for the sake of argument Wilmore-Moody's foundational premise that the language of the insurance application contractually limited the availability of rescission as a remedy to instances of intentional misrepresentation. See *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 445; 889 NW2d 759 (2016) (recognizing that the "plain terms" of the insurance contract in that case "did not require a finding of fraud or intentional misstatement, but rather allowed [the insurer] to rescind the contract based on a false statement, misstatement of a material fact, or a failure to disclose"). Generally, "[r]escission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer," and "[r]eliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *Id*. at 446 (quotation marks and citation omitted).

To the extent Wilmore-Moody also asserts without any evidence that Everest failed to prove that she knew that her misrepresentation "would be acted upon by the insurer to calculate the premiums," this contradicts the plain language of the insurance application[6] and Wilmore-Moody had a duty to have read and understood what she signed. See *Montgomery v Fid & Guar Life Ins Co*, 269 Mich App 126, 130; 713 NW2d 801 (2005) ("It is well established that failure to read an agreement is not a valid defense to enforcement of a contract. A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty.") (citations omitted).

Next, Wilmore-Moody argues that Everest waived its ability to rescind the policy because it paid for repairs on Wilmore-Moody's vehicle under the policy after informing Wilmore-Moody that the claim was under investigation. In *Burton v Wolverine Mut Ins Co*, 213 Mich App 514, 517; 540 NW2d 480 (1995), this Court held that the insurer's actions after discovering the insured's misrepresentation in the application constituted a waiver of the insurer's right to rescind the insurance policy in that case. The insured had misrepresented his driving record in applying for the insurance policy. *Id*. at 515-516. After discovering the misrepresentation, the insurer sent the insured a notice of cancellation indicating that the policy would be cancelled as of a specific date approximately 3 weeks after the date of the letter. *Id*. at 516. However, before the date the cancellation was to become effective but after the notice of cancellation had been issued, an automobile accident occurred resulting in a loss covered under the policy. *Id*. The insurer subsequently informed the insured that the policy was being rescinded as of the date of the original application, effectively denying coverage. *Id*. In reaching its holding, this Court reasoned as follows:

> [T]he case at bar does not simply present a case of an insurer exercising its right of rescission. Rather, after discovery of the material misrepresentation in the application, defendant chose, rather than issuing a letter of rescission, to issue a notice of cancellation, effective at some date in the future. Thus, before the accident in the case at bar, defendant discovered the material misrepresentation, chose to cancel (rather than rescind) plaintiffs' policy, and sent a notice of that cancellation

---

[6] This language has already been quoted and discussed in detail within this opinion.

before the accident with an effective date that happened to fall after the accident. As noted above, defendant also apparently retained a pro-rata share of the premium to cover the policy period from the onset of the policy until the effective date of cancellation, tendering that portion of the premium only after it chose to exercise rescission following the accident.

> In light of defendant's actions in the case at bar, we are persuaded that it has waived its right of rescission in this case. While we certainly do not wish to reward plaintiffs for the misrepresentation in the application for insurance, it was defendant who chose the remedy. We would not interfere with defendant's right to rescind the policy ab initio had it chosen to do so upon discovery of the material misrepresentation, regardless of whether that discovery occurred before or after the loss. However, in the case at bar, defendant did discover the misrepresentation before the loss and chose to issue a cancellation rather than a rescission. [*Id*. at 517-518.]

In this case, as an initial matter, Wilmore-Moody also failed to preserve this issue by raising it in the trial court below, *Mouzon*, 308 Mich App at 419, and this issue is therefore waived for appellate review, *Walters*, 481 Mich at 387-388.

Nonetheless, Wilmore-Moody has not demonstrated any entitlement to relief on this basis. She relies on the following testimony from her examination under oath to support her argument:

> *Q*. Okay. What type of damage did the TrailBlazer sustain in the accident?
>
> *A*. It was hit on the driver's side on the back.
>
> *Q*. It was a rear-end impact?
>
> *A*. Yes. It was hit on the back end of the truck. The truck that hit it was totaled. What they call—they call that total loss.
>
> *Q*. Okay. But the TrailBlazer didn't need any repairs following the accident?
>
> *A*. Yes, it did.
>
> *Q*. Oh, it did. Okay.
>
> *A*. Yes, and Everest fixed it.
>
> *Q*. And do you know how much those repairs cost?
>
> *A*. The estimate on it was $2,007. Everest paid $1,007 and told me that if I needed anything else that I was to contact them. I didn't. I just paid the bill.

However, the declaration page of Wilmore-Moody's policy indicates that there was no collision coverage for the Trailblazer. Furthermore, the June 12, 2017 letter to Wilmore-Moody indicating that her claim was under investigation provided as follows:

> Your client's vehicle constitutes physical evidence which Everest National Insurance Company may wish to photograph and inspect as soon as possible after a claim is reported. This correspondence shall serve as notice to you of Everest National Insurance Company's interest in this regard as well as notice to you that the vehicle should be preserved in its post-accident or loss condition until such time as it can be photographed and inspected. Everest National Insurance Company will photograph and inspect the vehicle at no cost to your client and as soon as is practicable so as to inconvenience your client as little as possible. Please understand that if Everest National Insurance Company is denied the opportunity to photograph and inspect the vehicle in its post-accident or loss condition, spoliation of evidence may be raised as a defense in the event this claim is denied at any point or in the event this claim results in litigation in a court of law. [Investigation Letter.]

Everest claims on appeal that it did not issue any payment for repairing damage to Wilmore-Moody's vehicle and that Wilmore-Moody's testimony to the contrary was false. Because Wilmore-Moody did not raise this argument below, Everest did not have an opportunity to rebut this claim with argument or more conclusive evidence in the trial court. However, even accepting as true Wilmore-Moody's claim that Everest issued such a payment,[7] there is no evidence that Everest did so *after* discovering the misrepresentation and thus Wilmore-Moody has not shown that the evidence supports a conclusion that Everest waived its right to seek rescission of the policy in this case through its conduct after discovering the misrepresentation. *Burton*, 213 Mich App at 517-518. Accordingly, Wilmore-Moody has not demonstrated any error in the trial court's ruling on this basis either. *El-Khalil*, 504 Mich at 160.

Finally, Wilmore-Moody argues that the trial court erred by granting summary disposition in favor of Zakir on the ground that the rescission of her insurance policy barred Wilmore-Moody's third-party claim pursuant to MCL 500.3135(2)(c). MCL 500.3135(2)(c) precludes a party from recovering noneconomic damages in tort if that party did not have the required no-fault insurance in effect for the party's vehicle.[8] *Gray v Chrostowski*, 298 Mich App 769, 776; 828 NW2d 435

---

[7] The evidence must be viewed in the light most favorable to the nonmoving party on a motion under MCR 2.116(C)(10). *El-Khalil*, 504 Mich at 160.

[8] At the time that the trial court granted Zakir's motion for summary disposition, MCL 500.3135(2)(c) provided that "[d]amages shall not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security required by section 3101 at the time the injury occurred." MCL 500.3135(2)(c), as amended by 2012 PA 158. The current version of this statutory provision provides, "Damages must not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security

(2012). However, this court has recently held the rescission of an insurance policy as a contractual remedy between the insured and insurer does not by itself operate to "alter the past" and render the insured as actually having been without no-fault insurance at the time of the accident for purposes of the prohibition contained in MCL 500.3135(2)(c) with respect to a third-party negligence claim. *Bernard Estate v Avers*, unpublished per curiam opinion of the Court of Appeals, issued April 8, 2021 (Docket No. 348048), pp 12-13. This Court reasoned as follows:

> It is true that rescission, as a contractual remedy, works to "undo [a contract] from the beginning," so "it is as if no contract had been made." But this contractual remedy is a "legal fiction," the fiction being that courts pretend the contract never existed between the relevant parties. The legal fiction is intended as a contractual remedy, and it does not actually alter the past.
>
> The issue here is whether Bernard, in fact, had proper security in effect at the time of his injury. The uncontested reality is that he did in the form of his insurance policy with Grange. The subsequent rescission of that policy as a contractual remedy for Bernard's fraud does not alter the reality that, at the time of Bernard's injury, he indeed had an insurance policy with Grange. Accordingly, because Bernard had the policy with Grange at the time of the accident and that policy constituted proper security for purposes of MCL 500.3101(1), we conclude that the bar to recovery in MCL 500.3135(2)(c) does not apply in this case. [*Id.* (citations omitted).]

We find the above reasoning persuasive and adopt it as our own for purposes of this case as well.[9] In this case, it was undisputed that Wilmore-Moody had an insurance policy with Everest at the time of the accident and that Everest subsequently rescinded the policy on the basis of fraud. Hence, the bar to recovery in MCL 500.3135(2)(c) does not apply with respect to Wilmore-Moody's third-party negligence claim against Zakir. *Bernard Estate*, unpub op at 12-13. We reverse the trial court's grant of summary disposition in favor of Zakir and remand for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no costs are awarded. MCR 7.219.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle

---

required by section 3101(1)1 at the time the injury occurred." MCL 500.3135(2)(c), as amended by 2019 PA 21; 2019 PA 22.

[9] Although unpublished opinions are not binding, this Court may look to unpublished opinions for persuasive guidance. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 20 n 16; 672 NW2d 351 (2003).